PHILLIP MATTES, Appellant, *v.* CHARLOTTA FRANKEL and JOSEPH SCHWARTZ, Respondents.

157        603
e 78 AD⁴587

1. EASEMENT — ACQUISITION OF RIGHT OF WAY, AS AGAINST VENDOR OF LAND, THROUGH HIS REPRESENTATIONS.   If the owner of two adjoining lots, over one of which a way has been used for more than twenty years from a lane connecting with the street to a barn on the rear of the other lot, the front being entirely occupied by a building, conveys the lot on which the barn stands, by a deed covering the appurtenances but making no mention of the right of way, and during the negotiation goes through the lane and over his own lot to the barn with the purchaser and points out that route as the existing right of way to the barn, and the purchaser takes the conveyance in reliance upon such representation, the rule that everything is granted by which the grantee may have and enjoy the use of the property applies to the right of way.

2. SUBJECTION OF GRANTOR'S REMAINING LAND TO RIGHT OF WAY. By such representations as to the right of way, the grantor consents to subject his remaining land to the easement of the granted land, and elects to make it a servient estate to that extent, in addition to such rights as the grantee and his predecessors in title had acquired by more than twenty years' use of the right of way.

3. ESTOPPEL BY REPRESENTATIONS.   Such declarations and representations of the grantor also have the effect of estopping him from denying the grantee's right of way.

4. ESTOPPEL OF VENDOR FROM SETTING UP TITLE AGAINST PURCHASER. If one is induced to purchase lands on representations of another designed to influence his conduct and creating a reasonable belief on his part that he is thereby acquiring a valid title to the same, under which he acts, the party who thus influenced him is estopped from setting up title in himself, existing at the time of the purchase, against that of the purchaser.

5. STATUTORY ESSENTIALS TO TRANSFER OF REAL ESTATE.   The enforcement of the above principle of estoppel in no way contravenes the statute

·that requires title or interest in·real estate to pass by operation of law, or ·by a deed or conveyance in writing.

*Mattes* v. *Frankel,* 65 Hun, 203, affirmed.

(Argued November 30, 1898; decided January 10, 1899.)

Appeal from a judgment of the late General Term of the ·Supreme Court in the third judicial department, entered October 15, 1892, affirming a judgment in favor of defendants entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, ·are stated in the opinion.

*Peter Cantine* and *Charles Davis* for appellant. By the ·conveyance of Louis B. Adams to the appellant, dated April 24, 1869, the title of the appellant's lot, together with the lot that Adams conveyed to him, extinguished the dominant and ·servient estate if it ever had existed. The entire title merged in the appellant. (2 Washb. on Real Est. [4th ed.] 301, 373, § 3; *Wolf* v. *Frost,* 4 Sandf. Ch. 71; *Grant* v. *Chase,* 17 Mass. 443; *Seymour* v. *Lewis,* 13 N. J. Ch. 450; *Atwater* v. *Bodfish,* 11 Gray, 150; *Pheysey* v. *Viscary,* 16 M. & W. 484.) There never was an easement by grant, by necessity, by adverse user, or by the word "appurtenance" in the habendum clause. (2 Washb. on Real Est. [4th ed.] 301, 308, 373; Jones on Ease. § 24; *Wolf* v. *Frost,* 4 Sandf. Ch. 71; *Grant* v. *Chase,* 17 Mass. 443; *Seymour* v. *Lewis,* 13 N. J. Ch. 450; *Pheysey* v. *Viscary,* 16 M. & W. 484.) All parol negotiations preceding the execution of a contract, and at the execution and delivery, are merged in it and cannot be varied, contradicted, enlarged or diminished, and the construction of the contract must stand on the language ·contained in it. (*Corse* v. *Peck,* 102 N. Y. 513; *South-ard* v. *Curley,* 134 N. Y. 148; *Weed* v. *Whitehead,* 1 App. Div. 192.) No conveyance of real estate, or any interest in real estate, is valid unless such conveyance is in writing, having a subscribing witness or duly acknowledged. (Washb.

on Ease. 28; *Ashley* v. *Ashley*, 4 Gray, 197; 3 Washb. on
Real Prop. [4th ed.] 164, §§ 48, 49.)

*Carroll Whitaker* for respondents. The way passed by the
grant; it was, at the time of the conveyance, apparent, visible,
open and notorious. (*Potter* v. *Iselin*, 31 Hun, 134; *Alley*
v. *Carleton*, 29 Tex. 74; *Butterworth* v. *Crawford*, 46 N.
Y. 352; *French* v. *Carhart*, 1 N. Y. 103; Washb. on Ease.
[4th ed.] 690, 691, 693; 2 Washb. on Real Prop. [3d ed.]
280; *Huttemeier* v. *Albro*, 2 Bosw. 546; 18 N. Y. 48; *Parsons* v. *Garner*, 5 Hun, 112; *Simmons* v. *Cloonan*, 81 N.
Y. 557; *Seymour* v. *Lewis*, 13 N. J. Ch. 439; *Walker* v. *Gerbord*, 9 Phila. 116.) The right of way was one of necessity. (3 Kent's Comm. 420, 421; *Simmons* v. *Sines*, 4
Keyes, 164; *N. Y. L. Ins. & T. Co.* v. *Milover*, 1 Barb.
Ch. 353; *Smiles* v. *Hastings*, 24 Barb. 44; 6 Wait's Act.
& Def. 356; Gerard's Tit. to Real Estate [2d ed.], 657; *Pettengill* v. *Porter*, 8 Allen, 1.) Defendants had a right of
way by prescription. (Washb. on Ease. & Serv. [3d ed.] 137;
*Miller* v. *Garlock*, 8 Barb. 153; *Ward* v. *Warren*, 82 N.
Y. 265; *Nicholls* v. *Wentworth*, 100 N. Y. 461; *Hill* v.
*Crosby*, 2 Pick. 466; *State* v. *Gregg*, 2 Hill [S. C.], 387.)
The plaintiff is estopped from denying the way to the use of
the defendants. (*Mattoon* v. *Young*, 45 N. Y. 696; *De Herques* v. *Marti*, 85 N. Y. 609; *Trustees, etc.*, v. *Smith*, 118
N. Y. 641; *Kenyon* v. *Nichols*, 1 R. I. 412; *Blair* v. *Wait*,
69 N. Y. 113; *Rindge* v. *Baker*, 57 N. Y. 209; *Kirkpatrick*
v. *Brown*, 59 Ga. 450; *Mead* v. *Anderson*, 40 Kans. 203;
*Carr* v. *L. Ry. Co.*, L. R. [10 C. P.] 307.) The defendants
had an irrevocable license to the use of the way. (*Babcock*
v. *Utter*, 1 Keyes, 403; *Wood* v. *Leadbitter*, 13 M. & W.
838; *Gaussen* v. *Morton*, 10 B. & C. 731; *Jamieson* v.
*Millemann*, 3 Duer, 255; *Wood* v. *Manley*, 11 Ad. & El.
34; 2 Wait's Law & Pr. 487; 1 Greenl. on Ev. § 294;
Godard on Ease. 101; *Rhea* v. *Forsyth*, 37 Penn. 503;
*McCarty* v. *Kietchenman*, 47 Penn. 239; *House* v. *Montgomery*, 19 Mo. App. 170.)

BARTLETT, J.   This is an action to recover damages for an alleged trespass, the plaintiff thereby seeking to test the validity of defendants' claimed right of way to reach the barn on the rear of their premises over his lands.   By the verdict of the jury and the affirmance of the General Term all the material and controverted facts are conclusively found against the plaintiff, and we are called upon to consider the questions of law.

In March, 1889, the plaintiff conveyed to the defendants improved real estate on Partition street, in the village of Saugerties, Ulster county, being a lot nineteen feet three inches in front and rear, and four hundred and seventy feet deep.   The buildings consisted of a store and dwelling in front the full width of the lot, and a barn and shed about one hundred feet in the rear of the front buildings.   These buildings were over thirty years old at the time of the conveyance.

The barn on the defendants' premises had been reached by a right of way that was open and notorious for more than thirty years, and one witness swearing he had known the "alleyway" for "forty odd years."

The undisputed facts as to title will make this matter of the right of way clear.   In 1853 one John Glennon owned the lot which now lies next north of defendants' lot, and is at present owned by the plaintiff.   In 1853 one Abigail Heath owned the lot immediately north of John Glennon's lot.

Glennon and Mrs. Heath, in August, 1853, by deed laid out a lane between their two lots eight feet wide and one hundred and fifty feet deep; six feet of the width of this lane was conveyed by Mrs. Heath and two feet by Glennon, the latter paying Mrs. Heath one hundred dollars in addition.   The record does not disclose when this way was first laid out, but the evidence shows an alley of some kind prior to 1853.

It was through this lane and over the lot now owned by the plaintiff that defendants and their predecessors in title reached the barn on defendants' premises.

Plaintiff took title to the lot he now owns, on the north of defendants' lot, in May, 1867, and of defendants' premises in April, 1869.

Plaintiff conveyed the latter to defendants in March, 1889, the deed making no mention of the right of way.

It is to be taken as established against plaintiff on this appeal that during the negotiations that led up to this conveyance he walked through the lane and over his own lot to the barn with defendant Schwartz and a third party, and pointed out that route as the right of way to the barn — not a new right of way he was then creating, but as an existing one, visible to the eye, and over which they had passed.

It is further to be taken as established that defendants relied upon this statement and representation when they received the conveyance from plaintiff.

It thus appears that the plaintiff stands before the court in a position destitute of all equity, and seeking to inflict great injury upon defendants by invoking certain technical legal principles, which he insists enable him to accomplish his purpose.

It is argued in his behalf that the deed being silent as to the right of way, the plaintiff's representations in respect thereto are immaterial and merged in the written instrument.

It is further insisted that defendants seek to establish a title or interest in real estate by estoppel in contravention of the statute that requires that such title or interest must pass by operation of law, or by a deed or conveyance in writing.

It is also urged that the title to the dominant and servient estates being vested in the plaintiff, the latter estate was merged in the former.

The learned trial judge submitted the case to the jury with the statement that defendants had shown no right of way by prescription or necessity, but allowed the jury to determine whether the representations alleged to have been made by the plaintiff as to the right of way were in fact made, and charged them that if they so found, " the plaintiff so practically located what he sold as to give the defendants such a license coupled with an interest to go through this alley that he cannot and ought not to be permitted to revoke it."

We are of opinion the charge of the trial judge, that the

right of way under the circumstances did not pass by the use of the word appurtenances in the deed, was more favorable to plaintiff then he was entitled to ask.

No principle of law is better settled than that some things pass by a conveyance of lands as incident and appurtenant thereto, though not named therein. This is the case with a right of way or other easement appurtenant to land. ( *Voorhees* v. *Burchard*, 55 N. Y. 98.)

In the case cited the grantor, owning certain premises upon which there was a sawmill, conveyed by metes and bounds the portion thereof upon which the mill was located, with appurtenances, describing it as his mill property. Between the premises conveyed and the highway was a piece of land for many years used as a way to the mill and as a mill yard for storing logs. There was no other access from the mill to the highway, and the use of the land was necessary to the mill as a mill yard.

This court held that an easement in said land for a way and a mill yard was carried by the principal thing conveyed.

In the case at bar we have the defendants' entire front on the street occupied by the building, and no possible way of reaching their barn from Partition street, except by removing a portion of the building, or purchasing a new right of way.

When the plaintiff sold these premises and made the representations he did as to the right of way, the general rule comes in that everything is granted by which the grantee may have and enjoy such use. (3 Kent's Com. 420–21.)

The plaintiff by his representations as to the right of way clearly consented to subject his remaining land to the easement of defendants', and elected to make it a servient estate to that extent. ( *Lampman* v. *Milks*, 21 N. Y. 505.) This is in addition to such rights as defendants and their predecessors in title had acquired by more than twenty years' use of the right of way as appears by the undisputed evidence.

We are also of opinion that the plaintiff is estopped from denying the defendants' right of way by reason of his declarations and representations in respect thereto.

The fact that the party to be estopped made representations in hostility to his record title existing at the time does not prevent the court from enforcing against him the general rule that when a party, either by his declarations or conduct, has induced a third person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission if the consequence would be to work an injury to such third person or to some one claiming under him. (*Trustees, etc.,* v. *Smith*, 118 N. Y. 641, and cases cited.) In the case just cited it was held by the Second Division of this court that if one is induced to purchase lands on representations of another designed to influence his conduct and creating a reasonable belief on his part that he is thereby acquiring a valid title to the same, under which he acts, the party who thus influenced him is estopped from setting up title to himself, existing at the time of the purchase, against that of the purchaser.

The enforcement of this principle in no way contravenes the statute that requires title or interest in real estate to pass by operation of law, or by a deed or conveyance in writing.

In *De Herques* v. *Marti* (85 N. Y. 609) this view of the law of estoppel is fully sustained.

FOLGER, Ch. J., said : " The fact that it is real estate that is concerned, the title to which and the rights in which are generally to be affected by instruments in writing formally executed, does not prevent the operation of the estoppel. Looking on in silence and not asserting a right, when other parties are making purchase and transfer of lands, will estop from asserting an antagonistic right therein."

We are of opinion that the defendants' right of way passed to them under the deed they received from plaintiff, and that the latter is also estopped from interfering with the same by his representations acted upon by the defendants.

It follows that the judgment appealed from should be affirmed, with costs.

PARKER, Ch. J. (dissenting). Considered from a pecuniary point of view this action is a trivial one, but the principle to be established by our decision is one of importance and, possibly, of far-reaching consequences. Whether the defendants had a right of way across the rear of plaintiff's lot to a barn on their own lot is the subject of controversy. The defendants sought to establish their title by necessity, by prescription, by estoppel, and they also claimed that the right of way passed as an appurtenant to the plaintiff's grant to them of a lot, for the benefit of which they claimed the right of way to have been originally created. All the judges who have had to do with this litigation, from the trial judge to and including the members of this court, have agreed that the alleged right of way did not pass as an appurtenance to the plaintiff's grant, and that the defendants failed to establish title by necessity or by prescription. The trial court was of the opinion that if the defendants' testimony was true, the plaintiff, pending the negotiations for the purchase from him of the lot by the defendants, did point out to them "the said route as the right of way to the barn" upon said lot; the defendants, in making the purchase, relied upon such representations, and, therefore, title by estoppel resulted. With that view the Appellate Division agreed. The plaintiff denied ever making any such representation, and his testimony is corroborated; but the jury believed the defendants, and the conflict of testimony is of no importance whatever on this review, except in so far as it calls attention to the fact that we have here present an illustration of the danger that the lawmaking power aimed at when it enacted that "no estate or interest in lands * * * shall hereafter be created, granted, assigned, surrendered or declared unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the parties. * * *" This provision, which found its proper place in that portion of the statutes relating to fraudulent conveyances and contracts, was intended to prevent fraud and to render it impossible either by honest errors of memory or perjured statements, to overthrow titles, and to create doubt and distrust where certainty and

confidence should exist. The right of way claimed by the defendants is, of course, an interest in lands within the meaning of the statute, and it will hardly be asserted by any one, at this late day, that it was within the power of this plaintiff to have vested in these defendants title to this alleged right of way by parol. (*White* v. *Man. Ry. Co.*, 139 N. Y. 19; *Welsh* v. *Taylor*, 134 N. Y. 450; *Crosdale* v. *Lanigan*, 129 N. Y. 604–610; *Taylor* v. *Millard*, 118 N. Y. 244; *Nellis* v. *Munson*, 108 N. Y. 453; *Cronkhite* v. *Cronkhite*, 94 N. Y. 323; *Pierce* v. *Keator*, 70 N. Y. 419.)

It has not been pretended in this case that the plaintiff at the time he conveyed to the defendants the lot adjoining the one over which the alleged right of way passes, could by any oral promise or agreement have vested in the defendants an easement consisting of a right of way across the lot not sold and have attached it to the land conveyed. The contention rather is that while he could not vest in the defendants an interest in the lot not sold, and attach it to the lot sold, if he should try ever so hard to do so by parol, yet if he represented that there was such a right of way when in fact there was not, and could not be, as matter of law, which the defendants were presumed to know, then the plaintiff will be held to be estopped from denying that he created such an easement and annexed it to the freehold conveyed by him to the defendants. If this contention be sustained, then the doctrine of estoppel has made great encroachments upon the statute. A vendor of real estate has only to point to wagon tracks across lands retained by him, or to a private alleyway on valuable city property, and say to an intending purchaser, " this is your right of way," in order to carve out a servient estate from lands reserved by him and attach it to the lands subsequently conveyed. I think it can be quite readily demonstrated that the doctrine of estoppel has not been carried to such length, but before taking up that subject it may be well to present the situation involved a little more fully.

In 1854 plaintiff's present lot was owned by John Glennon, while the next lot adjoining it on the north was owned by

Abigail Heath; by deed these parties created a lane between the two lots for the use of each lot; on the south side of Glennon's lot was defendants' lot, upon which was situated a barn, and the owner of it was permitted whenever he chose to do so to drive through the lane and then across the rear of the defendants' lot to the barn; thirteen years later, and in April, 1869, the plaintiff purchased the Glennon lot, and two years later he purchased the lot now owned by these defendants. It is not pretended that at the time the plaintiff purchased the last lot a right of way had been established across the rear of the first purchased lot and annexed to the lot last purchased. If, on the contrary, an estate by grant or prescription, from which a grant is presumed, had been carved out of the first lot, still owned by the plaintiff, and annexed to the second lot purchased by him, nevertheless the legal effect of the purchase of the last of the two lots was to merge the servient in the dominant estate. Both estates cannot exist in the same person, and the effect of vesting the separate estates in a given piece of real estate in one person is to merge the lesser estate in the greater. (Gerard's Titles to Real Estate [5th ed.], 766; Wash. on Real Estate [5th ed.], vol. 2, 398, 399; Jones on Easements, § 835; Washburn on Easements [4th ed.], 685.) When the owner sells a portion of the property he has the power to revive the easement thus merged or to create a new easement; but he must do it by express words, used in the conveyance of the land to his grantee, or by a separate grant.

So, had there been a right of way established in conformity with law, across the rear of the defendants' property, upon the vesting of the title to both lots in the plaintiff, the easement became extinguished, and the situation thereafter, down to the time of the conveyance of the lot to these defendants, was precisely the same as if there had never been an easement called a right of way across the plaintiff's lot. But the real position was even less favorable to the defendants' contention, if such a thing were possible, for at the time the plaintiff acquired title to the lot now owned by the defendants,

there was no right of way annexed to it across the lot first acquired and still owned by the plaintiff. There was a road occasionally and perhaps frequently used, but the right to use it had not been granted as required by the statute, nor had it been acquired by prescription, which implies a grant. The plaintiff, then, owned on April 24th, 1869, two lots, and he continued to be the owner until March 12th, 1889, a period of about twenty years, when he conveyed to the defendants one of the lots, and at the time the negotiations for the sale were pending, he pointed out a route leading from the lane across other premises belonging to him as "the right of way to the barn," and the defendant Swartz testified that in making the purchase he relied upon such representations, and thus it is said the plaintiff became estopped from denying that it was the defendants' right of way.

There are few older principles or rules of law than that of estoppel, which for centuries has been employed to bar a party from alleging or denying a fact to the injury of another contrary to his own previous allegation or denial. It signifies that a man, for the sake of fair and honest dealing, should be prevented from declaring that to be false which through his instrumentality has been accredited and acted upon as true. But the party who invokes the doctrine must have acted not only on the faith of the representation, but must have been *justified in doing so.* Now, assuming, as we must, that the plaintiff said, "Here is the right of way to this barn," or "pointed out the said route as the right of way to the barn," we note that he did not assert that it was annexed in any way to the lot that he was about to convey to the defendants, nor that he would convey it, and certainly these defendants, like all other parties, are presumed to have known the law, and hence they knew at the time this statement was made that the only way that they could acquire an easement in the remaining lot of the plaintiff was by grant. Such was the statute; and, as they were presumed to know the law, for the purpose of the disposition of this question, they did in fact know it,

and knowing it they were not deceived by the alleged misrepresentations of the plaintiff.

2. There was no right of way over the premises nor easement of any other kind connected with or annexed to the lot which they were about to purchase, and as they knew the fact to be that the plaintiff was the owner of both lots, they were chargeable with knowledge as matter of law that if there ever had been an easement in the nature of a right of way over the plaintiff's other lot, that easement had been extinguished nearly twenty years before by the merger of all the estates in both lots in one person. It follows that if the language alleged to have been employed by the plaintiff was capable of being understood as meaning that there was a right of way over the · plaintiff's other lot, annexed to the one defendants were about to purchase, the defendants were not justified in acting upon it in the face of the law declaring that such a thing could not be.

The defendants were about to purchase real estate, and they knew, or at least were bound to know, that the contract of the parties would be expressed in the deed ; that all prior negotiations would be merged in it and that they would receive nothing except that which would be expressly granted by deed ; that they could not as the outcome of negotiations with this plaintiff secure one lot by deed and still another or any part or interest therein, by estoppel. If the deed failed to convey to the defendants all that they bought, their remedy was to bring suit for a reformation of the deed on the ground of mutual mistake, or of mistake on their part and fraud on the part of the other party. They have concluded instead to be pioneers in a hitherto unexplored field of alleged legal rights and remedies, and keep the lands acquired by deed, while they attempt to wrest other lands, or an interest therein, from their grantor, ·through the doctrine of estoppel, because of something said pending the negotiations which .finally ripened into a deed.

The matter really does not seem to admit of discussion, but it has been forced upon us by an attempt to apply here cer-

tain decisions which were made for entirely different situations. It is said : "That if some person other than this plaintiff had owned the lot sold to the defendant, and he had stood by when that person offered to sell the premises, together with the right of way, and he had not asserted his title to the right of way, he would have been estopped from claiming title thereto." (Citing *DeHerques* v. *Marti*, 85 N. Y. 609; *Trustees* v. *Smith*, 118 N. Y. 641 and other cases.) True, and if this plaintiff were a third party instead of being a party to the contract, the cases cited would be applicable, for in such a case the plaintiff would have been in the position of having assented to a statement of fact which might perhaps have been true, and which the purchaser could have believed, namely, that there was a right of way over the plaintiff's land and annexed to the premises which the defendants were about to buy, a right which would pass by conveyance of the dominant estate as an appurtenant to the lands. (Jones on Easements, § 18; *Pierce* v. *Keator*, 70 N. Y. 419.) It would, therefore, be a duty to speak and prevent fraud, and a failure to perform that duty prevents a party from asserting something different from the representation that induced the situation complained of, but this plaintiff is not a third party; instead, he is a party to a contract which presumably embraces all the negotiations between the parties. To such a situation totally different rules apply. It is to the contract that each must resort, not only to ascertain, but to protect, whatever right or interest he may have. The contract may be done away with for fraud. If it does not express the real agreement of the parties, it may be so reformed in equity that it will, but while it stands it must be treated by the parties and the courts as containing the entire agreement upon the subject.

The judgment should be reversed and a new trial granted, with costs to abide the event.

BARTLETT, J., reads for affirmance; GRAY, HAIGHT, MARTIN and VANN, JJ., concur. PARKER, Ch. J., reads for reversal, and O'BRIEN, J., concurs.

Judgment affirmed, with costs.