Argued April 6, decided June 29, 1909.

## GERMAN SAVINGS & LOAN SOCIETY *v.* GORDON.

[102 Pac. 736.]

EASEMENTS—DEFINITIONS.

1. An "easement" is a right in one person to do certain acts on another's land, or to compel such other to refrain from doing certain acts thereon. In strictness the term does not include the authority of a landowner to use a way from her residence over land the legal title to which she retained for her own purposes.

EASEMENTS—SERVITUDE—"QUASI EASEMENT."

2. The owner of an entire tract of land or of two or more adjoining parcels may so employ a part thereof as to create a seeming servitude in favor of another portion to which the use becomes appurtenant. Such use is tantamount to an easement at will, so long as the unity of ownership continues, and is described as a "quasi easement."

EASEMENTS—QUASI EASEMENT—QUASI-DOMINANT TENEMENT—CONVEYANCE—EFFECT.

3. Where an owner of land creates a quasi easement in one portion of her land in favor of another portion, and conveys the quasi-dominant tenement without an express reference in the deed to the servitude, whether the easement passed by implied grant depends on the nature and character of the use imposed, as indicating whether the grantor intended to convey a right to use the quasi tenement, and the grantee reasonably expected to take and hold such right.

EASEMENTS — QUASI EASEMENT — CONVEYANCE — IMPLIED GRANT — CONTINUOUS AND APPARENT QUASI EASEMENT.

4. The grantee of a quasi-dominant tenement takes an apparent quasi easement by implied grant, provided the easement is one of reasonable necessity to the enjoyment of the property conveyed.

EASEMENTS—DISCONTINUOUS QUASI EASEMENT—IMPLIED GRANT.

5. A discontinuous quasi easement, when evidenced in a substantial manner, passes by implied grant as an appurtenant to the dominant tenement, when the latter is severed by a conveyance thereof.

EASEMENTS — QUASI EASEMENTS — IMPLIED GRANT — CONVEYANCE OF DOMINENT ESTATE—SEVERANCE.

6. G., while the owner of four lots in a city block numbered 1, 2, 7, and 8, lots 1 and 2 facing on H. street and 7 and 8 in the rear facing on C. street, sold lot 7, reserving a passageway 5.125 feet wide, extending from C. street to the rear of lot 2, on which her house was partially located. G. built a picket fence on the south line of lot 8, just north of the passageway. The entrance to the passageway was originally indicated by a gate, and was reached by three ascending steps from the street grade and covered by a two-board walk, which extended eastward across the lot past the house of the purchaser of lot 7, who built a fence from the northwest corner of his house along his boundary to C. street, so that the passage was inclosed to the rear of his house, and from there on was not fenced. The gate, when closed, completed the angle and connected the south line of G.'s fence with the west line of the fence of the owner of lot 7. G. mortgaged lots 1 and 2 without reference to the right of way, which mortgage was thereafter foreclosed. *Held*, that the purchaser at the foreclosure sale acquired the right to use the passageway as a quasi-easement appurtenant to lot 2.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

The following is a plat showing the property and way in controversy:

This is an appeal by the defendant, George W. Gordon, from a decree enjoining him from obstructing an alleged private way over part of his land on which the plaintiff, the German Savings & Loan Society, a private corporation asserts that it has an easement, as an incident to its ownership of adjoining land. The facts are that on January 30, 1891, Mrs. Leaner Gray, being the owner of lots 1, 2, 7, and 8, in block 37, of Caruther's addition to Caruther's addition to the city of Portland, conveyed to Gordon the south 50 feet of lot 7, reserving to herself the north 5.125 feet thereof. Lot 2 lies immediately

south of lot 1, and both are bordered on the east by Hood street. Lots 7 and 8 join lots 2 and 1, respectively, and extend west to Corbett street. Gordon, soon after purchasing his land, built thereon a house, the north line of which was near his north boundary. Mrs. Gray was then living on lots 1 and 2 in a house which fronted east. She built on the south line of lot 8 a picket fence, between which and Gordon's house she caused to be constructed a passageway from Corbett street to the rear of her building. The entrance to the passageway was originally indicated by a gate, and, as the lots were somewhat higher than the street grade, three ascending steps led from the gate to a two-board walk which extended eastward across the lot past Gordon's house, at the end of which walk were five descending steps. Gordon built a fence from the northwest corner of his house, along his boundary to Corbett street, so that the passageway was inclosed to the rear of his house, but east thereof the walk was not fenced. The gate referred to when closed completed the angle and connected the south line of Mrs. Gray's fence with the west line of Gordon's fence. Such was the condition of the land described September 17, 1892, when Mrs. Gray, in order to secure the payment of $6,600, executed to plaintiff a mortgage on lots 1, 2, and 8, in block 37 of the addition specified, together with the appurtenances, etc. Default having been made in the payment of an installment of the debt, the mortgage was foreclosed, the premises were sold to the plaintiff, the sale was confirmed, and a sheriff's deed was executed to the purchaser November 27, 1896. The mortgagor vacated the premises, and, the plaintiff taking possession thereof, its tenants continued to use the passageway until it was closed by Gordon, to whom Mrs. Gray on January 25, 1906, conveyed the north 5.125 feet of lot 7. To restrain such obstruction this suit was instituted, resulting in a decree as hereinbefore stated.                                          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Andrew T. Lewis.*

For respondent there was a brief and an oral argument by *Mr. Milton W. Smith.*

Opinion by Mr. Chief Justice Moore.

1. The question to be considered is whether or not a right to use a passageway was impliedly granted by the mortgage, so that, upon the foreclosure thereof and a sale and conveyance of the premises, an easement became appurtenant thereto. An easement is a right in one person to do certain acts on another's land, or to compel such other to refrain from doing certain acts thereon. Tiffany, Real Property, p. 677.

2. As Mrs. Gray placed the stairs and walk on her own land, the legal title to which she retaind for that purpose, her authority to use the way cannot be denominated an easement within the strict definition of that word. The owner of an entire tract of land, or of two or more adjoining parcels, may so employ a part thereof as to create a seeming servitude in favor of another portion to which the use becomes appurtenant. *Lampman* v. *Milks,* 21 N. Y. 505. Such use is tantamount to an easement at will, so long as the unity of ownership continues. *Elliott* v. *Rhett,* 5 Rich. Law (S. C.) 405 (57 Am. Dec. 750, 759). The servitude referred to is known as a quasi easement. Tiffany, Real Property, § 315. "The servitude of the civil law," say Mr. Chief Justice Lewis, in *Kieffer* v. *Imhoff,* 26 Pa. 438, 442, "has a much wider signification than the easement of the common law comprehending many rights, which in the latter fall under the division of *profits a prendre.*" Though there is a distinction between the terms adverted to, the word "servitude" where employed in this opinion will be used as synonymous with the phrase "quasi easement."

3. When the quasi-dominant tenement is conveyed, without an express reference in the deed to the servitude,

the quasi easement is occasionally held to have been impliedly granted, and at other times not to have passed, depending upon the nature and character of the use imposed upon the quasi servient tenement by invoking the presumption that the parties contracted with reference to the conditions of the property at the time of the sale, and that the grantor intended to convey a right to use the quasi easement, and that the grantee reasonably expected to take and hold such right. 10 Am. & Eng. Enc. Law 422; *John Hancock M. L. Ins. Co.* v. *Patterson,* 103 Ind. 582 (2 N. E. 188: 53 Am. Rep. 550).

In *Phillips* v. *Phillips,* 48 Pa. 178 (86 Am. Dec. 577, 580), in speaking of a quasi easement, which survives a severance of the tenements by a conveyance of the quasi dominant estate, and which servitude passes by implied grant, Mr. Justice THOMPSON observes: "It is not to be understood by this doctrine that any temporary convenience adopted by the owner of property is within it. By all the authorities it is confined to cases of servitudes of a permanent nature, notorious, or plainly visible, and from the character of which it may be presumed that the owner was desirous of their preservation as servitudes, evidently necessary to the convenient enjoyment of the property to which they belong, and not for the purpose of mere pleasure." The courts of the common law, borrowing the terms from the Code of France, recognize, *inter alia,* the classification of servitudes into continuous and discontinuous, in defining which a text-writer says:

"Continuous are those of which the enjoyment is or may be continual without the necessity of any actual interference by man, as a water spout or a right of light or air. Discontinuous are those the enjoyment of which can be had only by the interference of man, as rights of way, or a right to draw water." Washburn, Easements (2 ed.), § 13. "The test of continuousness," says a text-writer, "is that there is an alteration or arrangement of a tenement which makes one part of it dependent in some measure upon another. This alteration or arrangement

must be intended to be permanent in its nature." Jones, Easements, § 143.

It is generally held that, upon the conveyance of a quasi-dominant tenement, a quasi easement appurtenant thereto which is continuous passes by implied grant. 14 Cyc. 1168. Where the owner of land makes one part of it servient to another by an obvious and reasonably permanent alteration, and conveys the dominant part, his grantee takes such portion benefited by the easement which the change effected. *Cihak* v. *Klekr,* 117 Ill. 643 (7 N. E. 111) ; *Kelly* v. *Dunning,* 43 N. J. Eq., 62 (10 Atl. 276) ; *Simmons* v. *Cloonan,* 81 N. Y. 557. An author states this legal principle as follows:

"The rule is general that, where one conveys a part of his estate, he impliedly grants all those apparent or visible easements upon the part retained which were at the time used by the grantor for the benefit of the part conveyed and which are reasonably necessary for the use of that part." Jones, Easements, § 129.

It is held by some of the state courts of last resort that the grantee of a quasi-dominant tenement does not take by implied grant a continuous and apparent quasi easement, except in cases where such servitude is a necessity. 14 Cyc. 1168. The weight of authority, however, supports the doctrine that "reasonable necessity" is the proper gauge for determining whether or not the servitude passes by implied grant. 10 Am. & Eng. Enc. Law (2 ed.), 424; Tiffany, Real Property, § 317.

5. The rule generally obtains that a discontinuous quasi easement does not pass upon a conveyance of the dominant tenement, unless the deed is sufficient in form expressly to create a servitude *de novo.* 14 Cyc. 1168; Jones, Easements, § 145; *Kelly* v. *Dunning,* 43 N. J. Eq. 62 (10 Atl. 276. An exception to this rule is recognized where the quasi easement consists of a formed or an inclosed road or way. Jones, Easements, §§ 254, 265. Thus a lane evidenced by fences, and used as a private way in

connection with a quasi-dominant tenement, was held by the Supreme Court of Pennsylvania to have passed as an appurtenant upon a severance of the premises by an implied devise of the servitude. *Phillips* v. *Phillips,* 48 Pa. 178 (86 Am. Dec. 577). The deviation from the general rule adverted to has been followed by the court which first formulated the exception. *Overdeer's Adm'r* v. *Updegraff,* 69 Pa. 110, 119. In that case, though the easement was specifically mentioned in the grant, the court, referring to the servitude, remarks: "But if there had been no express reservation of the right to the use of the alley in the conditions of sale, and in the deed executed and delivered to the purchaser, the latter would have taken it subject to the servitude imposed upon it by the decedent for the use and benefit of the occupants of the adjoining lot. It was a continuous and apparent easement, and the law is well settled that in such a case the purchaser, whether at private or judicial sale, takes the property subject to the easement." It will be observed from the language last quoted that the word "continuous" is used to qualify the word "easement." As the servitude there referred to was an alley, it is difficult to understand how the way could have been designated as "continuous." That part of the opinion set forth herein was evidently not necessary to a decision of the question involved. In *Cannon* v. *Boyd,* 73 Pa. 179, 181, land that was subject to a mortgage was platted by the owner of the premises who built on two adjoining lots, on one of which was an alley that was used in connection with the other lot. The land was sold in distinct lots under the mortgage, and it was determined that the first lot was sold subject to the use of the alley, although no reference was made to it in the sheriff's deed. In deciding that case, Mr. Justice WILLIAMS, speaking for the court, says: "Where a continuous and apparent easement or servitude is imposed by the owner on one portion of his real estate for the benefit of another, the law is

well settled that a purchaser at private or judicial sale, in the absence of an express reservation or agreement on the subject, takes the property subject to the easement or servitude." It will be seen that the word "continuous" is again used by that court to qualify a servitude which was discontinuous. Though the cases which thus follow the authority of *Phillips* v. *Phillips,* 48 Pa. 178 (86 Am. Dec. 577, 580), relate to ways, and support the principal case, the use of the word "continuous," to which attention has been called, would ordinarily seem to weaken the exception originally recognized.

It is believed, however, that the two later decisions adverted to are based on the facts involved, and not on a misconception of the legal principle applicable thereto, and that the word "continuous" was inadvertently used. It is possible that such word was employed to express the idea that the way had been continuously used, and not to indicate a "continuous" quasi easement within the commonly accepted meaning of that term. If so, the word was inaccurately used, and the conclusion reached in the two cases cited is compatible with the exception noted in the original case. It may be that the word "continuous" as thus employed was used as a synonym for "apparent." Such meaning has been given to the terms. Thus in *Fetters* v. *Humphreys,* 18 N. J. Eq. 260, 262, in referring to the subject, it is said: "A privilege or right attached to one tenement or parcel of land to enjoy some benefit in or over another tenement or parcel, is called an easement of the dominant tenement, to which it belongs, and a servitude upon the servient tenement or that in which it exists. These easements are either apparent and continuous, or not so. Apparent or continuous easements are those depending upon some artificial structure upon, or natural formation of, the servient tenement, obvious, and permanent, which constitutes the easement or is the means of enjoying it. As the bed of a running stream, an overhanging roof, a pipe for con-

veying water, a drain, or a sewer. Non-apparent or non-continuous easements are such that have no means specially constructed or appropriated to their enjoyment, and that are enjoyed at intervals, leaving between these intervals no visible sign of their existence, such as a right of way, or right of drawing a seine upon the shore." If the interpretation thus imparted be correct, it follows that there is no inconsistency in the Pennsylvania cases, to which attention has been called. In *Martin* v. *Murphy*, 221 Ill. 632 (77 N. E. 1126), the syllabus is as follows: "Where the owner of several lots having no alley at the rear builds a walk, making a passageway from the inside lot across the others, upon the conveyance by such owner of one of the lots without reference to the passageway across it being made in the deed, an easement of passage becomes at once appurtenant to the other lots if the marks of the burden be open and visible, and passes with such lots whether mentioned in the deeds of conveyance or not, and each subsequent purchaser takes subject to the easement in favor of the other lots, as it is apparent from an inspection of the premises at the time of the purchase." In that case the quasi easement was bounded on one side by a brick wall and on the other by a fence. A door indicated the entrance to the way which servitude was first evidenced by a plank walk, but later relaid with cement. Other gates swung across the passage, marking the boundaries of the several owners of the property as divided by their grantor. It was there ruled that the way was reasonably necessary and sufficiently indicated to impose on the parties purchasing the property, notice of the existence of the quasi easement. The Supreme Court of Illinois, after calling attention to its own decisions relating to discontinuous easements that pass by implied grant, makes the following observation: "There is a conflict among the authorities outside this State as to whether the principles of law which we have above stated are applicable to a case involving a right of way.

That no such distinction exists in this state between a right of way and other easements is apparent from an examination of the cases above cited, as the controversy in most of them was in regard to the existence of a right of way." In *Baker* v. *Rice,* 56 Ohio St. 463, 477 (47 N. E. 653, 656), a way was held to have passed by implied grant upon severance of the quasi dominant and servient tenements. In deciding that case Mr. Justice MINSHALL says: "But it is claimed that only such easements as are termed 'continuous' will pass by implication in a grant, and that such as are termed 'discontinuous' will not. This is a distinction of the civil law, and has been incorporated in the law of some of the states, particularly Maine and Massachusetts. The former are such as operate without the intervention of man, such as drains and sewers. The latter require the intervention of man in their use, such as ways. The distinction is somewhat arbitrary, and is not uniformly adopted, as will appear from the cases cited. The better rule, and the one now more generally adopted, is not to consider the particular kind of easement, but whether it is apparent, designed to be permanent, and is reasonably necessary to the use of the premises granted." We are unable to discover any valid reason for a distinction in the rules of law applicable to servitudes depending upon whether they are continuous or discontinuous, except in the matter of the greater conspicuity which the former usually affords. An artificial ditch in which water regularly flows must necessarily be a constant reminder to all beholders of the changed condition of the surface of the earth whereby the dominant tenement is drained or irrigated by the conduit which is appurtenant thereto. *McDougal* v. *Lame,* 39 Or. 212 (64 Pac. 864). Water thus flowing through lands and necessary for their use passes as an appurtenant with a conveyance of the premises. *Simmons* v. *Winters,* 21 Or. 35 (27 Pac. 7: 28 Am. St. Rep. 727).

A discontinuous quasi easement when evidenced in a similar substantial manner ought to pass by implied

grant as an appurtenant to the dominant tenement when the latter is severed by a conveyance thereof. The reason for this deduction is ably stated by the court in *Phillips* v. *Phillips,* 48 Pa. 178 (86 Am. Dec. 577, 581), as follows: "It may be granted that the continuance of drains, water pipes, and mill races may more distinctly indicate their permanent and essential nature than a mere private way; but, when the permanency of the way is proved, confessed, or not disputed, this difference vanishes. They stand on the same footing."

6. In the case at bar, though the plaintiffs' tenants can pass over its own land across lot 8 to Corbett street, so that the passageway is not an absolute necessity, we are satisfied that the stairs and walk as laid by Mrs. Gray serve as a more convenient way, and believe them to be reasonably necessary to the enjoyment of the property at the time the mortgage was given, and as the quasi easement across Gordon's land was fenced on the north and inclosed on the south by the north wall of his house, and by the fence extending from the northwest corner of his dwelling to Corbett street, the passageway was apparent, being indicated on the ground with such a degree of permanency as to afford notice that its existence was designed to be permanent; and in our opinion it passed as an appurtenant by the implied grant.

It follows from these considerations that the decree should be affirmed; and it is so ordered.

AFFIRMED.