MILES et al. v. BODENHEIM et al.
(No. 1726.)

(Court of Civil Appeals of Texas. Texarkana. March 15, 1917.)

1. EASEMENTS ☞17(5)—CREATION—RIGHT OF WAY.

Where R. owned an entire tract of land when he conveyed part to B., and owned all the tract except the part conveyed to B. when he conveyed another part to T., and, before he sold to B., R. by a fence segregated a strip of land or alley from the part of the land or lot afterwards conveyed to M. by R.'s widow, and constructed improvements on the part or lot he himself resided upon, later conveyed to T., with reference to the alley and its use in connection therewith, as did B., and provided no other way to reach his part of the land, later sold to T., the law, on the widow's conveyance to M., implied an easement or servitude upon the land constituting the alley conveyed to M. in favor of B. and T., since where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of severance is in use and reasonably necessary for the enjoyment of the other, the law implies a grant of the right to continue the use.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 45.]

2. FRAUDS, STATUTE OF ☞100—CONVEYANCE OF LAND — EASEMENT — SUFFICIENCY OF WRITING.

Though an instrument in writing as provided by Vernon's Sayles' Ann. Civ. St. 1914, art. 1103, is necessary to convey an easement, a conveyance in writing duly signed and acknowledged is sufficient to convey an easement appurtenant to the land conveyed, though the easement is not named therein.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 189.]

3. FRAUDS, STATUTE OF ☞100—CONVEYANCE — SUFFICIENCY — APPURTENANCE — HOMESTEAD.

Though an easement of an alleyway appurtenant to a homestead is within Vernon's Sayles' Ann. Civ. St. 1914, art. 1115, requiring conveyance of homestead to be by deed executed and acknowledged by the grantor and his wife, the deed of a homestead duly signed and acknowledged by the grantor and wife will pass an easement appurtenant, though the easement is not named in the deed.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 189.]

4. EASEMENTS ☞22 — NOTICE — BONA FIDE PURCHASERS.

A purchaser of property subject to the easement of an alleyway which was openly used was charged with knowledge of the existence of the alley and its use.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 60.]

5. WITNESSES ☞148 — TRANSACTIONS WITH DECEDENTS — ACTION AGAINST ADMINISTRATORS.

Defendant, in a suit to enjoin the closing of an alleyway, by making the widow and administratrix of his grantor a party, as the warrantor of the title he claimed to the land, in which plaintiffs asserted the easement of the alleyway, could not render inadmissible, under Vernon's Sayles' Ann. Civ. St. 1914, art. 3690, relative to testimony as to any transaction with or statement by a decedent in actions by or against executors or administrators, testimony admissible against him had he not made her a party.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 650.]

6. WITNESSES ☞149(2)—TRANSACTIONS WITH DECEDENTS—RIGHT TO OBJECT.

Administratrix of decedent, joined, in suit to enjoin closing of alley, as warrantor of title defendant claimed to the land in which plaintiffs asserted easement, alone had the right to object to the admission of testimony that it concerned statement of her decedent and was against her within Vernon's Sayles' Ann. Civ. St. 1914, art. 3690.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 556.]

Appeal from District Court, Gregg County; W. C. Buford, Judge.

Suit by G. A. Bodenheim and another against C. F. Miles and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

See, also, 184 S. W. 633.

It appears from the record that on July, 1905, G. A. Rogers and his wife owned a tract of land fronting west about 319 feet on Center street in the city of Longview, and north about 200 feet on College street in said city. A rough plat of the tract, showing it divided into parts, is given below:

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

At the time stated the tract of land was inclosed by fences, except for an opening about 10 feet wide at its northeast corner on College street, indicated by the dotted line on the plat. The parts of the tract were separated by fences constructed at points indicated by inside straight lines on the plat. Rogers and his wife had lived in a house on the part of the tract marked "Miles," and while living there so constructed the fences as to leave an open way about 10 feet wide between said part and the east line of the tract, which they used in going to and coming from College street to other parts of the tract. But, the house in which they lived having been destroyed by fire, Rogers and his wife had constructed, and in July, 1905, were living in, a house on the part marked "Thompson," and as an outlet from same to College street were using the open way mentioned and an extension of same along the east line of the part marked "Bodenheim," indicated by the dotted line. By a deed dated July 3, 1905, Rogers and his wife conveyed the part (but not including by the metes and bounds in the deed and the strip 10 feet wide east of the dotted line) marked "Bodenheim" to appellee G. A. Bodenheim; and by a deed dated June 10, 1907, conveyed the part marked "Thompson" to W. S. Thompson, who conveyed same to J. R. Rainey, who conveyed it to appellee K. S. Melton; and, Rogers having died, his widow, appellee Mrs. J. B. Morrow (she having married again), as such and as administratrix of the community estate, by a deed dated May 2, 1908, conveyed the remainder of the tract, being the part marked "Miles" and the open way about 10 feet wide from College street along the east line of the tract to the north line of the part marked "Thompson," to appellant C. F. Miles. Each of the deeds mentioned contained covenants of general warranty. The deed from Rogers and wife to Bodenheim, and the one from Rogers and wife to Thompson, but not a plat (hereinafter set out) attached to it, were of record at the time the one to Miles was made; but in neither of the deeds was any mention made of the alley or way above referred to. When Bodenheim in 1905 purchased the part marked on the plat with his name he at once began to improve it, building thereon a dwelling house, outhouses, fences, and cement walks, and planting thereon trees and shrubbery, and thereafterwards, with his family, used and occupied it as a home. The improvements were constructed with reference to the alley; and, in the expectation that it would remain open, no other way for vehicles, etc., to pass from the front to the rear of his premises was provided. The improvements placed by Rogers on the part marked "Thompson" were constructed with reference to the alley, and no other way was provided by Rogers to pass from the front to the rear of that part. When Miles in 1908 purchased the part marked with his name he constructed a dwelling house on same, and thereafterwards, with his family, used and occupied it as his home. While Rogers occupied the part marked "Thompson" as his home, and during the time Thompson and Rainey successively owned and occupied it as a home, the alley remained open and was used by them, respectively, as a way (and the only one existing for vehicles, etc.) to and from the premises. And said alley was open and being so used at the time appellee Melton purchased the premises from Rainey, at the time Bodenheim purchased the part marked with his name, and at the time Miles purchased the part marked with his name, and ever thereafterwards remained open, and was used by Melton, Bodenheim, and Miles as a way to and from portions of their respective premises abutting on it, and, it seems, also by others owning property east of and abutting on it. This suit was by appellees Bodenheim and Melton against appellant Miles to enjoin him from closing the alley. In their petition said appellees alleged, substantially, the facts set out above, and further alleged, in effect, that the way was a necessary one for use in reaching the eastern portion of the tract of land and parts thereof into which it was subdivided, and was provided by Rogers for his own use while he owned any of the land, and the use of his vendees when he should sell same or parts thereof; that to induce them to purchase the parts conveyed to them, respectively, Rogers represented to each of them that the way was intended to be, and would be, maintained as a permanent one for the use of owners of parts of the tract of land; that they respectively relied upon the way being such an one as it at the time appeared and as Rogers represented it to be, and purchased the parts conveyed to them, respectively, when otherwise they would not have purchased same; that at the time appellant Miles purchased the part conveyed to him the way was, and for a long time theretofore had been, an open and obvious one, and the only way used or which could be used for vehicles, etc., to the parts of the lots abutting on it; and that the character of the way and the use theretofore made and then being made of it were known to appellant Miles at the time he purchased. Appellant's answer consisted of demurrers, and plea setting up that the way was a private one; that appellees Melton and Bodenheim and others who used it were licensees; that the way was not one of necessity to those who used it, and that he had no notice at the time he purchased the part conveyed to him that appellees claimed a right other than a licensee to use the alley. He further alleged that the deed Mrs. Morrow made to him contained a covenant of general warranty, and asked that she be required to defend the suit, and for judgment against her on the warranty in the event Melton and Bodenheim obtained the relief they sought against him; and he further alleged that the

claim asserted by appellees Melton and Bodenheim was a cloud on his title, which he asked the court to remove, and prayed for judgment for the strip of land claimed as a way.

Wm. S. Thompson testified for appellees Melton and Bodenheim that attached to the deed Rogers and his wife delivered to him, conveying the part of the tract marked with his name on the plat above, was a sketch, referred to above, made by Rogers, and as follows:

And the court permitted him to further testify, over appellant's objection, that Rogers said, with reference to the alley shown on the sketch:

"If I sell this other property it [alley] will be held open. It was distinctly understood that the alley was to be maintained. In a very few words he said to me, if I sell this other property down there I am going to see that the alley is kept open. He had reference to the property now owned by Miles."

The grounds of appellant's objection to the testimony was that it was hearsay and in contravention of article 3690, Vernon's Statutes, as follows:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

It was claimed the statute set out applied because it appeared that the deeds made by Rogers to Thompson, by Thompson to Rainey, and by Rainey to appellee Melton, contained covenants of general warranty, and that Rogers' widow, Mrs. Morrow, was a party to the suit.

Special issues were submitted to the jury. Omitting such of them as are regarded as wholly immaterial to the rights of the parties, those remaining and the findings thereon were as follows:

"Question No. 1: At the time of the sale of the lot by Rogers and wife to G. A. Bodenheim was there an alley on the east side of the Rogers property, appurtenant and appendant to the entire Rogers property, and was said alley, if any, open and freely accessible and continuous and apparent, and was said alley appurtenant and appendant to the lot purchased by said G. A. Bodenheim?
"Answer: Yes.
"Question No. 2: Did G. A. Rogers, prior to the time he sold to G. A. Bodenheim, reserve and provide an alley on the east side of his property for the use and benefit of the same, and was this alley in existence at the time of the sale to G. A. Bodenheim?
"Answer: Yes.
"Question No. 3: If G. A. Rogers provided an alley for the use and benefit of his said property, was the same appurtenant and appendant to his entire property and to the portion sold to G. A. Bodenheim, and continuous and apparent, and was it necessary for the reasonable enjoyment of said property and the part sold?
"Answer: Yes.
"Question No. 4: At the time G. A. Rogers and wife sold the lot to W. S. Thompson, and prior thereto, had the said G. A. Rogers provided an alley on the east side of his property for the use and benefit of same, and, if so, was said alley continuous and apparent, appurtenant and appendant to said property and to the part sold to the said W. S. Thompson?
"Answer: Yes.
"Question No. 5: If, prior to the sale to W. S. Thompson, the said G. A. Rogers had provided or reserved an alley for the use and benefit of his property and the same was continuous and apparent and appurtenant and appendant to said property and to the portion sold to the said W. S. Thompson, was said alley at the time necessary to the reasonable use and enjoyment of said property and the part sold to Thompson?
"Answer: Yes.
"Question No. 6: At the time C. F. Miles purchased his lot from Mrs. G. A. Rogers was the alley in question open and visible, and was it used by the occupants of the present Melton home and G. A. Bodenheim, their families, servants and employés, and others having business with them on their premises, and was said alley connected with the back premises of said parties by gates or openings thereon?
"Answer: Yes.
"Question No. 7: At the time C. F. Miles purchased his said lot did he know of the existence of said alley, and that same was open, and that it was being used by the occupants of the Melton place and the Bodenheim place, their families, servants and employés, and other persons having business with them?
"Answer: Yes.
"Question No. 8: Did G. A. Rogers, at or about the time he sold the lot to G. A. Bodenheim, agree with said G. A. Bodenheim that the alley or roadway on the east side of the property should remain open for his use?
"Answer: We believe there was.
"Question No. 9: At or about the time G. A. Rogers sold the lot to W. S. Thompson, did he agree with said W. S. Thompson that the alley or roadway would remain open for the use and enjoyment of the said Thompson property he purchased?
"Answer: Yes.
"Question No. 10: Was it the purpose and intention of G. A. Rogers, at the time he sold the lots in question to Bodenheim and Thompson, to let the alley remain open for their use and enjoyment of the lots they purchased from him?
"Answer: Yes.
"Question No. 11: Did G. A. Rogers promise the plaintiff Bodenheim and W. S. Thompson to keep open the driveway or alley, and was that one of the conditions of the trade in each case?
"Answer: Yes.
"Question No. 12: Did Mrs. Rogers know of the arrangement and consent to it, and was it

her homestead from which the sales were made to Bodenheim and Thompson?

"Answer: Yes.

"Question No. 13: Did the defendant C. F. Miles know that Bodenheim and Thompson claimed to own an easement across the lot when it was purchased by him of Mrs. Rogers?

"(Not answered.)

"Question No. 14: What amount of money paid in cash would sufficiently compensate the defendant C. F. Miles for the permanent and continuous use of the roadway across his premises?

"Answer: $150.

"Question No. 17: Is the use of the alley across the Miles lot of such a character as to interfere with the quiet enjoyment of the home by the defendant's family?

"Answer: No.

"Question No. 18: If you believe that the deceased, G. A. Rogers, promised the plaintiff Bodenheim and those who purchased the lots from the south side of his homestead an easement across his remaining lot reserved as a homestead, then state if the same was intended as a permanent interest in his said lot to the extent of said roadway.

"Answer: Yes.

"Question No. 19: Did he inform his wife of such intention?

"(Not answered.)

"Question No. 20: If you believe that the deceased, G. A. Rogers, gave permission to the plaintiffs to use his road or alleyway, state if such permission was due to the personal confidence and friendship between him and the said plaintiffs, and if he at that time intended that they should have the right of selling this privilege to other parties who would in turn also have the right and privilege of crossing the homestead lot of the said G. A. Rogers.

"Answer: We believe said easement was given for the benefit of the property owners, whomsoever they may be.

"Question B: Was the alley in question fenced off on the east side of the Rogers property and separated from the main portion of same at the time of the sales to Bodenheim and Thompson, and did Mrs. Rogers, his wife, know of the same?

"Answer: Yes."

On the findings of the jury the court rendered judgment in favor of appellees Melton and Bodenheim enjoining appellant Miles from closing the alley, and in favor of appellant against Mrs. Morrow for $150 as the sum he was entitled to recover of her as for a breach of her covenant warranting the title to the land she conveyed to him.

McCord & Campbell, of Longview, and Beard & Davidson, of Marshall, for appellants. Young & Stinchcomb and Lacy & Bramlette, all of Longview, for appellees.

WILLSON, C. J. (after stating the facts as above). Appellant insists that the easement claimed by appellees Melton and Bodenheim could have been created only by an express grant thereof by a deed duly executed by Rogers and his wife, or by a grant thereof the law would imply from the necessity of the case, or from long and continuous use of the alley as a way. Appellant further insists that it did not appear from either said appellees' pleadings or the evidence that an easement as claimed was created in either of

those ways, and that the trial court therefore erred when he overruled appellant's demurrer to said appellees' petition, and when he refused to peremptorily instruct the jury to find in his favor against said appellees.

[1] It may be conceded, at once, that an easement as claimed in the strip of land in question did not appear to have been created in either of the ways suggested. But we think it appeared from the pleadings and also from findings of the jury supported by evidence that an easement nevertheless existed as claimed.

Rogers owned the entire tract of land at the time he conveyed a part thereof to Bodenheim; and he owned all the tract except that part when he conveyed another part thereof to Thompson. Before he sold to Bodenheim, Rogers by a fence had segregated the strip in question from the part afterwards conveyed to appellant; he had constructed improvements he placed on the part he resided upon with reference to the alley and its use in connection therewith, and had not provided any other way to reach same (his barn, for instance) from either College or Center streets; he afterwards subjected the alley to use only as a way to and from the parts of the tract abutting upon it to said streets, and was so using it at the time he sold to Bodenheim; he and Bodenheim (who had constructed improvements on the part conveyed to him with reference to the alley, and had provided no other way to reach same) were so using the alley at the time he (Rogers) sold to Thompson; and Bodenheim and Thompson, or his vendees, were so using it at the time Mrs. Rogers sold to appellant.

The facts recited make applicable, we think, a rule which has been stated as follows:

"The general rule is that where during the unity of title an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use and is reasonably necessary for the fair enjoyment of the other, then upon a severance of such ownership there arises by implication of law a grant of the right to continue such use. The application of the rule must depend upon the nature, arrangement and use of the estate, the relation of the parts to each other, and the existing degree of necessity for giving such construction to the grant as will give effect to what may be supposed to have been, considering the manner of the use, the reasonable intendment of the parties; the underlying principle in such cases being that included in the grant are all such privileges and appurtenances as are obviously incident and necessary to the fair enjoyment of the thing granted, substantially in the condition in which it is enjoyed by the grantor, unless the contrary is provided. The rule is also said to be based on the maxim that no man can derogate from his own grant—this being in effect a formulation of a principle of estoppel. A presumption frequently invoked in that the parties contracted with a view to the condition of the property as it actually was at the time of the transaction, and after sale neither party without the consent of the other has a right to change, to the detriment

of the other, that condition which openly and visibly existed. Of course this presumption may be rebutted by parol evidence of an agreement or understanding at or prior to the sale that the easement was not to pass, on the theory that a presumption raised by parol evidence may also be rebutted by that character of evidence. The rule itself, since it presupposes the existence of quasi easements, must be distinguished from the principle which underlies the creation of ways of necessity." 9 R. C. L. p. 755 et seq.; 14 Cyc. 1166.

And see Sellers v. Railway Co., 81 Tex. 458, 17 S. W. 32, 13 L. R. A. 657; Carmon v. Dick, 170 N. C. 305, 87 S. E. 224; Mattes v. Frankel, 157 N. Y. 603, 52 N. E. 585, 68 Am. St. Rep. 804; Teachout v. Duffus, 141 Iowa, 466, 119 N. W. 983; Insurance Co. v. Patterson, 103 Ind. 582, 2 N. E. 188, 53 Am. Rep. 550; Powers v. Heffernan, 233 Ill. 597, 84 N. E. 661, 16 L. R. A. (N. S.) 523, 122 Am. St. Rep. 199; Rollo v. Nelson, 34 Utah, 116, 96 Pac. 263, 26 L. R. A. (N. S.) 315; German Savings & Loan Society v. Gordon, 54 Or. 147, 102 Pac. 736, 26 L. R. A. (N. S.) 331; Phillips v. Phillips, 48 Pa. 178, 86 Am. Dec. 577; Zell v. Universalist Society, 119 Pa. 390, 13 Atl. 447, 4 Am. St. Rep. 654; Martin v. Murphy, 221 Ill. 632, 77 N. E. 1126.

In the Zell Case the easement claimed was in an alleyway, as it is here. The existence of the easement could not in that case, as it cannot in this one, be referred to an express grant, nor to an implied grant based on necessity. The court applied the rule stated above and affirmed a judgment establishing the easement claimed.

So in the German Saving & Loan Society Case, the easement claimed was a way over lots belonging to Gordon. The same rule was applied, and a judgment in favor of the loan society establishing the existence of the easement was affirmed by the Supreme Court of Oregon. In disposing of the appeal the court discusses the rule and its limitations at length, and with reference to a contention made there, as it is here, that the rule did not apply to easements such as the one claimed there and here, quoted approvingly from Baker v. Rice, 56 Ohio St. 463, 47 N. E. 653, as follows:

"It is claimed that only such easements as are termed 'continuous' will pass by implication in a grant, and that such as are termed 'discontinuous' will not. This is a distinction of the civil law, and has been incorporated in the law of some of the states, particularly Maine and Massachusetts. The former are such as operate without the intervention of man, such as drains and sewers; the latter require the intervention of man in their use, such as ways. The distinction is somewhat arbitrary, and is not uniformly adopted, as will appear from the cases cited. The better rule, and the one now * * * generally adopted, is not to consider the particular kind of easement, but whether it is apparent, designed to be permanent, and is reasonably necessary to the use of the premises granted."

In the Martin Case also the easement claimed by Murphy was a way over a lot adjacent to his own belonging to Martin.

The Supreme Court of Illinois applied the rule in affirming a judgment in Murphy's favor, saying:

"The rule of the common law upon the subject is, that where the owner of two heritages, or of one heritage consisting of several parts, has arranged and adapted these so that one derives a benefit or advantage from the other of a continuous and obvious character, and he sells one of them without making mention of those incidental advantages or burdens of one in respect to the other, there is in the silence of the parties an implied understanding and agreement that these advantages and burdens, respectively, shall continue as before the separation of the title."

When uncontroverted facts recited in the statement above and findings warranted by testimony made by the jury are considered with reference to the rule of law applicable, it is plain, we think, that the judgment in favor of the existence of the easement claimed is right, and that it should be affirmed unless other contentions than those specified made by appellant, and now to be referred to, ought to be sustained.

[2, 3] One of those contentions is that an easement like the one claimed was an estate in land which could be passed from Rogers and wife to Bodenheim and Thompson and his vendees only by an instrument in writing as provided by article 1103, Vernon's Statutes. Another is that it was an interest in land constituting the homestead of Rogers and his wife which could be passed to said Bodenheim and Thompson only by a deed executed and acknowledged by Mrs. Rogers as provided by article 1115, Vernon's Statutes. It is, we think, a sufficient answer to those contentions to say that the conveyances to Bodenheim and Thompson were both in writing and appeared to have been signed and acknowledged by both Rogers and his wife as contemplated by the articles of the statute referred to. The legal effect of the deeds, construed in connection with testimony showing the situation of the premises they respectively conveyed, with respect to the alley and its use, was to grant the easement claimed by Bodenheim and Melton in the alley. "No principle of law is better settled," said the court in Mattes v. Frankel, 157 N. Y. 603, 52 N. E. 585, 68 Am. St. Rep. 804,

"than that some things pass by a conveyance of lands as incident and appurtenant thereto, though not named therein. This is the case with a right of way or other easement appurtenant to land."

"We have seen no case that intimates," said the court in City of Indianapolis v. Kingsbury, 101 Ind. 200, 51 Am. Rep. 749, "that a married woman who conveys property does not also convey all appurtenances."

[4] Another contention made by appellant is that the finding that he knew at the time he bought that the alley existed, and of the use being made of it by Bodenheim, Melton, and others, was without the support of evi-

dence. It abundantly appeared from the testimony that, at the time Miles bought, the alley was fenced on both its sides, and was open at its mouth on College street, and was being used by Bodenheim and Melton as a way to the parts of their premises abutting on it. Appellant himself testified that he had "had his mind on" the part he bought for a long time before he bought it, and had been "noticing it for quite a while." "I suppose I saw the alley," he said; "I knew it was being used by wagons and buggies, or whatever might want to go in there." But, even if it did not appear from his own testimony, as it did, or from other testimony, that appellant knew, as found by 'the jury, that the alley existed and about the use made of it, we think the law would charge him with such knowledge. Moll v. Hagerbaumer, 98 Neb. 555, 153 N. W. 560; German Saving & Loan Society v. Gordon, 54 Or. 147, 102 Pac. 736, 26 L. R. A. (N. S.) 331. In the Moll Case the court said:

"If plaintiff had an easement, it was open and visible to defendants when they purchased the servient estate. They were therefore chargeable with notice of plaintiff's roadway right, if any."

[5, 6] Another contention, and the only other one we will refer to, is that the court erred when he overruled appellant's objection to the testimony of the witness Thompson set out in the statement above. As we view it the statute invoked had no application to Bodenheim and Melton's suit. It was against appellant Miles, and not against Mrs. Morrow. She was neither a necessary nor a proper party to their suit against Miles. They sought no relief as against her, and no judgment should have been rendered in their favor against her in either her individual capacity or her capacity as administratrix of the community estate between her and her deceased husband, or in her capacity as his heir. She was a party to the suit at the instance alone of appellant Miles. He alone sought relief as against her. We do not think Miles by making her a party, as the warrantor of the title he claimed to the land in which Bodenheim and Melton asserted an easement, could render inadmissible testimony admissible against him had he not made her a party. If it should be conceded that the testimony objected to tended to show a breach of the covenant in the deed of Mrs. Morrow to appellant, and therefore was "against" her within the meaning of the statute, it seems to us that she alone had a right to urge the objection interposed to its admission, and to complain because the objection was overruled. She has not appealed, but is in the attitude of acquiescing in the judgment.

There is no error in the judgment of which appellant has a right to complain, and it is affirmed.