PAGEL, HORTON & CO., INC., Plaintiff, *v.* HARMON PAPER COMPANY, Defendant.

Fourth Department, June 29, 1932.

*Wickes & Neilson* [*Nathan F. George* of counsel], for the plaintiff.

*Purcell, Cullen & Reynolds* [*Francis E. Cullen* of counsel], for the defendant.

EDGCOMB, J. This controversy comes to us upon an agreed statement of facts.

In July and August, 1929, the plaintiff sold and delivered to the Warren Parchment Company, a corporation organized under and by virtue of the laws of the State of New York, a quantity of bleached sulphite, at the agreed price of $3,684.60. Plaintiff seeks to recover the balance due upon the purchase price of this material, not from the parchment company to whom the goods were sold and delivered, but from the Harmon Paper Company, an entirely separate and distinct corporation, upon the theory that the parchment company is nothing more than a mere agent, subdivision department or instrumentality of the Harmon Paper Company, and that the latter corporation in reality is the real party in interest.

While a corporation will ordinarily be regarded as a legal entity, quite separate and apart from its stockholders, officers or directors, or from other corporations with which it is connected, the law will not permit this fiction to be carried to such an extent as to become a cloak for fraud or illegality. (*Jenkins* v. *Moyse*, 254 N. Y. 319, 324; *Imar Mortgage Corp.* v. *Ticoli Realty Corp.*, 232 App. Div. 635, 640; affd., 257 N. Y. 594; *McCaskill Co.* v. *United States*, 216 U. S. 504, 514, 515; *Pittsburgh & Buffalo Co.* v. *Duncan*, 232 Fed. 584; *New York Trust Co.* v. *Carpenter*, 250 id. 668; *United States* v. *Milwaukee R. T. Co.*, 142 id. 247; *Commonwealth* v. *Monongahela Co.*, 216 Penn. St. 108; 12 Columbia Law Rev. 496; 13 Cal. Law Rev. 235, 237.)

The courts will also look beyond the fiction of corporate entity, and hold two corporations, in legal contemplation, to be but one unit, where one is so organized, related to or controlled by the

other as to be its mere agent, instrumentality or *alter ego*. (*Matter of Muncie Pulp Co.*, 139 Fed. 546; *Interstate Tel. Co.* v. *B. & O. Tel. Co.*, 51 id. 49; affd., 54 id. 50; *New York Trust Co.* v. *Carpenter*, 250 id. 668, 673; *Industrial Research Corp.* v. *General Motors Corp.*, 29 F. [2d] 623.)

Much has been written of late by juristic writers upon the inherent nature of a corporation. The subject has also been extensively dealt with in the opinions of various courts. An interesting and exhaustive examination of this subject will be found in an article written by Prof. Wormser, entitled " Piercing the Veil of Corporate Entity," in 12 Columbia Law Review, page 496. Attention should also be called to a most instructive and comprehensive discussion of the matter by Judge BIJUR in his most excellent opinion in *Farmers' Loan & Trust Co.* v. *Pierson* (130 Misc. 110).

In deciding the practical problem which is presented to us for solution, viz., whether, under the conceded facts, the law of this State will permit the plaintiff to brush aside and disregard the independent corporate existence of the Warren Parchment Company, and hold this defendant, an entirely separate, distinct and different being, liable for merchandise sold to the parchment company, it is unnecessary to enter into any philosophical or scholastic discussion of the subject of corporate personality. Whether the conception of separate corporate existence is correctly designated as a legal fiction, or whether that phrase is nothing more than a metaphor which is used to convey the idea that the rights and liabilities of a corporation are to be kept separate and apart from those of its individual shareholders, officers, directors and other corporations with which it is associated, is of but little moment. Mr. Justice HOLMES, in *Klein* v. *Board of Supervisors* (282 U. S. 19, 24), suggests that it leads nowhere to call a corporation a fiction; that if it is a fiction it is one which is created by law with intent that it should be acted upon as true.

An examination of the various authorities relating to this subject reveals the fact that the line of demarcation between the cases in which the corporate entity is observed, and those where it is disregarded, is very ragged and hazy. Each case must be regarded as *sui generis*. It is said in *Riley* v. *Pierce Oil Corp.* (245 N. Y. 152, 154) that " slight shading of the facts creates possible distinctions."

This brings us to a brief statement of the conceded facts concerning these two corporations, and their relations to each other.

The Warren Parchment Company is a domestic corporation. From the date of its organization in September, 1911, until after the sale of the sulphite in question, it was engaged in the manu-

facture of grease proof and glassine paper, at its mill in Dexter, Jefferson county, N. Y. The defendant Harmon Paper Company was incorporated in 1910, and operated a mill for the manufacture of wall paper, colored paper specialities, and box covers at Brownville, Jefferson county, N. Y., some five or six miles from the village of Dexter. In 1926 the defendant acquired all the outstanding stock of the Warren Parchment Company, but no merger of the two corporations has ever been effected. Each maintained its separate organization, although in recent years the officers and directors of the two corporations have been the same, with but one exception. After the defendant acquired the stock of the Warren Parchment Company, each corporation operated its own plant, maintained its own real property, and kept separate and distinct books and bank accounts; each paid its own taxes, insurance, payroll, repairs, maintenance and other debts out of its own treasury, and by its own checks and notes; each made its own contracts in its own name; each sold its products to entirely different people; and each made a different type of paper, and used a different kind of sulphite in the manufacture of its product. The two corporations made consolidated tax returns to the Internal Revenue Bureau, and each advanced money and extended credit to the other, separate accounts of such loans being kept; and actual payments being made back and forth between the two. The funds of the two were never mingled. For several years prior to the transactions which form the basis of this controversy the plaintiff sold to the parchment company large quantities of bleached sulphite. On May 21, 1928, more than a year prior to the sale in question, plaintiff wrote the parchment company demanding payment of two invoices which were then past due. Defendant replied as follows: "The Warren Parchment Company is now controlled by this Company and we are going through the process of merging the two Companies. This being so, it isn't convenient at this writing to send you our check for this account so we trust you will accept our one month's note enclosed and a check for the interest." Instead of inclosing its own note and check, however, defendant sent and plaintiff accepted the note and check of the Warren Parchment Company. The contemplated merger or consolidation of the two companies has never taken place. Several months later the defendant again wrote the plaintiff, stating that it was inclosing its check and note in payment of certain indebtedness of the parchment company, but again the check and note inclosed were instruments of the parchment company and not of the defendant. In January, 1930, the Warren Parchment Company filed a voluntary petition in bankruptcy in the District Court of the Northern District of New

York, and included in its schedules plaintiff's present claim for the purchase price of the sulphite in question. In February following the parchment company filed with the referee in bankruptcy an offer to pay its creditors twenty-five per cent of its indebtedness. This offer was accepted, and the composition was duly confirmed. Plaintiff received and accepted a check for $921.15, the amount coming to it on its claim against said bankrupt on said settlement. The Warren Parchment Company has since been discharged in bankruptcy.

Upon this state of facts I do not think it can be said that the defendant is the *alter ego* of the parchment company.

Whatever may be the rule in other jurisdictions, it is well settled in this State that one corporation is not liable for the acts of another corporation merely because it owns all the stock of the second company, and can control its activities, or because the two corporations have directors or officers in common. (*Jenkins* v. *Moyse*, 254 N. Y. 319; *Stone* v. *Cleveland, C., C. & St. L. R. Co.*, 202 id. 352, 357; *Senior* v. *New York City R. Co.*, 111 App. Div. 39; affd., 187 N. Y. 559; *Elenkrieg* v. *Siebrecht*, 238 id. 254; *Brock* v. *Poor*, 216 id. 387, 400, 401;. *People* v. *American Bell Telephone Co.*, 117 id. 241, 255.)

Prof. Wormser in his article above referred to, in speaking of what is necessary to permit the court to look through the mask of corporate existence to the actual substance of things, says, at page 503 of volume 12 of the Columbia Law Review: " It is not enough, however, that shareholders in two corporations are identical. It is not enough that one owns shares in the other. It is not enough that they have mutual interrelated dealings. In order to disregard the entity it must clearly appear that one corporation is but the ' business conduit ' of the other."

In *Halsted* v. *Globe Indemnity Co.* (258 N. Y. 176, 179) it is said that a corporation absorbs and takes the place of those who own its stock.

" In no legal sense can the business of a corporation be said to be that of its individual stockholders." (*People* v. *American Bell Telephone Co.*, 117 N. Y. 241, 255; *Matter of Green*, 231 id. 237, 247.)

While the stipulated facts disclose that the two corporations are closely connected, each maintains its own organization and transacts its own business. There is no such relationship as to indicate that the parchment company is the mere creature or tool of the defendant.

While it is difficult to reconcile all the cases relating to this subject, there will be found running through these various authorities a broad and comprehensive rule that, where one corporation acquires

sufficient stock in another to control it, the corporate entity of the two organizations will be respected and preserved where such acquisition is resorted to for the purpose of participating in the business and affairs of the owned corporation in the normal and usual manner in which the ordinary stockholder shares in the management of a corporation in which he is interested, but where such stock ownership is acquired with the design of so dominating and regulating the subsidiary company that it becomes a mere dummy or department of the holding company, the court will not permit the owner to escape liability for the acts of its child or *alter ego,* and will deal with the real party in interest as if the dummy or substitute did not exist.

Tested by this rule, it is apparent that the parchment company is more than a mere instrumentality or adjunct of the defendant, and that the two corporations are and must be treated as separate juridical persons.

The case of *Berkey* v. *Third Ave. R. Co.* (244 N. Y. 84) is very similar to the case at bar. In that action the plaintiff sought to hold the defendant liable for personal injuries received through the negligence of a motorman, who was operating a car on the tracks of the Forty-second Street, Manhattanville and Saint Nicholas Avenue Railway. Each company had the same executive officers, and practically the same board of directors. The Third Avenue Railway Company owned substantially all the stock and second mortgage bonds of the Forty-second Street Railway Company, and a large block of its first mortgage bonds, and made large loans to it from time to time. All the cars which ran over the tracks of the two companies were marked "Third Avenue System." Cars were purchased by the Third Avenue Railway Company, and leased to its various subsidiaries. The wages of the motormen and conductors running on the tracks of the Forty-second Street Railway Company were paid by that corporation, as well as many expenses for maintenance and repair. The corporate entity of the two corporations was recognized and upheld, and the plaintiff was denied a recovery against the dominant company.

*Matter of Watertown Paper Co.* (169 Fed. 252) presents a situation closely analogous to the case at bar. The affairs of that company and the H. Remington & Son Pulp and Paper Company were closely intermingled. The paper company was organized in 1864, and its entire stock was owned by Hiram Remington and Edward W. Remington. From 1886, when Hiram gave twenty shares of stock in the company to each of his three daughters, the stockholders remained the same down to his death in 1905. The H. Remington & Son Pulp and Paper Company was organized in

1887, Hiram Remington, Edward Remington and Nellie, his wife, owning all of its stock. Substantially its entire output of pulp was taken by the paper company. The two corporations gave each other commercial paper, and indorsed notes for each other. The business of the two corporations was conducted from the office of the paper company. The pulp company had no bank account; all its bills were paid and all its accounts were collected by the paper company. The pulp company paid a part of the office expenses. The paper company was later adjudicated a bankrupt, and the pulp company presented a large claim for pulp which it had sold to the bankrupt. Allowance of this claim was resisted upon the ground that the two corporations were in effect one and the same, and that the pulp company was in reality presenting a claim against itself. The claim was allowed, the court holding that the two corporations were separate and distinct entities.

The fact that in its correspondence with the plaintiff the defendant had stated that it controlled the parchment company, and that it was not convenient at the moment to pay the company's debts, is not, in the face of the conceded facts, sufficient to hold defendant liable for this bill.

In *Elenkrieg* v. *Siebrecht* (238 N. Y. 254) it was sought to hold an individual liable for a defect in the stairway of a building which had been constructed by him on property which he held under a lease, but which he had afterward deeded to a corporation in which he was largely interested. On the trial it was argued that the defendant was the real owner of the property, and that the corporation was a mere subterfuge. The defendant had written numerous letters in which he had referred to this property as " my premises." A judgment against the individual defendant was reversed upon the ground that the corporation was the owner of the premises, and that, although the defendant was the dominating spirit in the company, he was not liable, notwithstanding his admission that the building was his property.

The stipulated facts fall far short of warranting the conclusion that the Warren Parchment Company was a mere agent, tool, dummy, department or instrumentality of the defendant, or that its separate corporate existence was a mere sham or subterfuge, or that it was used as an instrument for concealing the facts and truth concerning the two corporations. No claim is made here of any fraudulent conveyance. I think that the two corporations must be held to be separate and distinct beings, and that the Warren Parchment Company alone is legally liable for the purchase price of this sulphite.

One other matter remains for discussion. Plaintiff insists that the

defendant is estopped from denying its liability for this particular indebtedness of the parchment company. This contention cannot be upheld.

There can be no estoppel unless the party invoking the rule relied upon and was misled by the representations or conduct of the person sought to be estopped. This is one of the essential elements which must be present to constitute an estoppel *in pais*. (*Mattes* v. *Frankel*, 157 N. Y. 603, 607; *Trustees, etc.*, v. *Smith*, 118 id. 634, 641; *Geiler* v. *Littlefield*, 148 id. 603, 610; *Fagan* v. *McDonnell, No. 1*, 115 App. Div. 89; *McGowan* v. *Catholic Mut. Benefit Assn.*, 76 Hun, 534.)

" A person is estopped only so far as his words or conduct has influenced another party." (*Geiler* v. *Littlefield*, 148 N. Y. 603, 610.)

The sulphite in question was sold in July and August, 1929, more than a year after this correspondence in which the defendant stated that it was taking over the business of the parchment company. Notwithstanding these letters, plaintiff made the sales in question and billed the material to the parchment company. When that company went into bankruptcy, plaintiff presented its claim for the purchase price of this particular sulphite to the trustee in bankruptcy, and later accepted the trustee's check for twenty-five per cent of its bill. Plaintiff was not induced by any statement or act of the defendant to extend credit to the parchment company, or to deal direct with that corporation regarding the sale of the sulphite in question, or of any other merchandise.

Upon the stipulated facts plaintiff cannot recover the purchase price of this sulphite from the defendant. The controversy must, therefore, be determined in favor of the defendant, and judgment entered accordingly.

All concur.

Submitted controversy determined in favor of defendant, with costs.