In the Matter of the Estate of Israel Steinberg, Deceased.

Surrogate's Court, Kings County, October 29, 1934.

*Bennett E. Siegelstein*, in person.

*Irving Berson*, for Louis H. Supnick.

*Homer I. Harris*, for Jennie Steinberg.

*Jacob H. Livingston*, special guardian for Bernard Steinberg and another.

Wingate, S. It may be doubted whether there is any subject of general law concerning which the conception of bench and bar alike is more hazy than it is regarding that raised by the special guardian in this proceeding.

Whereas his procedure for the purpose was somewhat unconventional, being merely by report and not by formal objection, he has substantially presented for decision the question of the obligation of an executor to include in his executorial account the transactions of a corporation, the controlling stock interest in which was owned by the decedent and passed to his testamentary fiduciary, where the business of such corporation was continued after the qualification of the latter.

The facts presently giving rise to the problem, so far as material, are not in controversy. At some undisclosed time prior to his death the decedent caused a corporation to be organized under the laws of the State of New York with the corporate name of Steinberg Cut Stone Company, Inc. Its total capitalization of 500 shares was issued to the testator and formed one of the chief assets of his

estate upon his death. Letters testamentary were issued to the present accountant on February 1, 1932, at which time this stock came under his control. It is listed in his account as among the assets still in his possession. At the time of the death the assets of the corporation possessed a value of $21,000. The business has been conducted in the interval. The present value of the stock is not disclosed in the account, but presumably it has decreased, since the account admits that the corporation is indebted to the estate in the sum of $2,950 for accrued rental of premises occupied by it, belonging to the estate.

The executor warmly contests the propriety of the objection of the special guardian to his failure to include the operations of the corporation in his account on the grounds, *first*, that the corporation is a separate entity whose affairs were conducted as such by its duly elected officers and directors, and, *second*, that the guardian has been informed of the affairs of the corporation by the report of an accountant employed by him and who examined its books.

The second ground advanced for a dismissal of objection is patently wholly without merit. It is the primary duty of any estate fiduciary to render a full and accurate account of his transactions in the performance of his trust. (Surr. Ct. Act, §§ 257, 264; *Frethey* v. *Durant*, 24 App. Div. 58, 61.) This duty is absolute, and is not varied by the amount of knowledge which a beneficiary may or may not possess respecting the actions and transactions of his trustee in the performance of the trust duties.

The question at bar, therefore, resolves itself purely into one of the powers and obligations of a testamentary fiduciary respecting the affairs of a duly incorporated company where he holds stock of such corporation in his trust capacity.

Certain aspects of the relationship of estate fiduciaries to corporations, some stock of which is held by them in their trust capacity, were considered by this court in *Matter of Ebbets* (149 Misc. 260). In that case the fiduciaries did not possess a controlling interest in the stock and it was demonstrated that their connection with the corporation had not arisen either directly or indirectly by reason of their fiduciary holdings. The court accordingly determined that their activities in connection with the corporate affairs were no part of their transactions as fiduciaries of the estate, and refused to permit an inquisition respecting them on the settlement of their accounts.

In the case at bar the situation is essentially different. Here the executor obtained complete stock control of the corporation (*Bailey* v. *Hollister*, 26 N. Y. 112, 116), possessing as a result thereof the right to vote (*Matter of Ebbets*, 139 Misc. 250, 252; *Elger* v. *Boyle*,

69 id. 273, 275), even without the formality of a transfer of the shares to his name on the books of the company. (*Matter of North Shore Staten Island Ferry Co.*, 63 Barb. 556, 571, 572; and see *Matter of Fitch*, 160 N. Y. 87, 96; *Matter of Hastings*, 120 App. Div. 756, 759.) By virtue of this right he possessed the unquestionable power of electing every single director of the corporation (Stock Corp. Law, § 55), with attendant authority to sell all of its property and franchises (Stock Corp. Law, § 20) and to effect its voluntary dissolution. (Stock Corp. Law, § 105, subd. 4, ¶ c.) The power to control the management would have been his had he held a mere bare majority of the stock, the other enumerated powers requiring a two-thirds holding. Here he held it all.

That an estate fiduciary possesses a very real responsibility in respect to a major stock holding in his hands is demonstrated by the epoch-making determination of the Court of Appeals in *Matter of Auditore* (249 N. Y. 335), which held an administrator liable not only for losses resulting to his estate by reason of his active misfeasance (p. 342), but also for those sustained in consequence of his non-feasance and the failure to perform with reasonable diligence the acts which were within his power (p. 345).

Whereas, however, the *Auditore* case is illuminative of the ultimate obligation of an estate fiduciary to respond to his *cestuis que trustent* for any damage sustained by them by reason of his actions or omissions in his dual capacity of estate fiduciary and corporate executive, it is not necessarily determinative of the precise question at bar, which is whether the transactions of the corporation were so closely connected with the administration of the trust reposed in the executor as to make them necessarily a part thereof, so far as the beneficiaries of his trust were concerned.

The accountant insists that the effect of incorporation is in substance to interpose " a non-conductor " (Mr. Justice HOLMES, quoted in Prof. Wormser's " Disregard of the Corporate Fiction," p. 9) between the two sets of activities, namely, those passing through the corporation's books on the one hand, and the remaining transactions of the fiduciary on the other. He thus squarely raises the question of the extent to which the activities of a corporation are to be considered those of the individual or individuals activating them or suffering them to be accomplished.

Particular phases of the present question have frequently been presented to the courts, the common statement of the problem being addressed to the " Raising of the Corporate Veil " or the " Disregard of the Corporate Entity." To this court these statements of the process involved in such a determination seem rather to becloud than to clarify the issue, tending to the conception of some act of

legerdemain or of a sweeping aside of fundamental concepts of law and equity, rather than to the administration of justice in an orderly manner in accordance with established principles.

The classical definition of a corporation, stated by Chief Justice MARSHALL (*Dartmouth College v. Woodward,* 4 Wheat. 518, 636) of " an artificial being, invisible, intangible, and existing only in contemplation of law," is, it is believed, subject to misconstruction unless it be appreciated that the word " being " means merely " a creation of the law." More satisfying is the expression of the late Judge VANN in *People v. Knapp* (206 N. Y. 373, 381) that " a corporation   *   *   *   is a mere conception of the legislative mind. It exists only on paper through the command of the legislature that its mental conception shall be clothed with power." Perhaps the best of all is the statement of Mr. Justice BIJUR that it is merely " a name for a useful and usual collection of jural relations." (*Farmers' Loan & Trust Co. v. Pierson,* 130 Misc. 110, at p. 119.)

The vast growth of corporate organizations in this country and the extension of the rights and powers granted to them by the Legislatures of the several States during the past three-quarters of a century are facts familiar to every student of the law. The corporate conception, however, long antedated this period. The reason for its vastly extended use in this later period lay in the need for greater aggregations of capital to develop the tremendous potential resources of the country than were reasonably available to any single individual or small group of individuals. Furthermore, many of the projects confronting the pioneers of business, whereas offering great probabilities of profit, presented corresponding possibilities of loss, and whereas the inherent natural willingness of the pioneering spirit furnished an incentive to gamble for the rich reward which would crown success in the enterprise, the substratum of caution interposed an inhibition to the act of placing the total resources of the individual at the hazard of the event. Finally, many of the most promising projects of construction and development were of such considerable magnitude that their completion might well postdate the lives of the individuals who initiated them. The need for a method of organization which would eliminate these three difficulties was met by the conception of the modern business corporation, and it is the presence of these three characteristics which furnish the essential points distinguishing a corporation from every other variety of business organization.

To meet this need, the several Legislatures provided from time to time that one or more individuals might devote specified portions of their capital to the promotion of a clearly stated business object without personal financial liability for any sums beyond

those voluntarily dedicated thereto, and that the sums thus contributed should remain dedicated to the object, irrespective of the deaths of the contributors unless or until a specified percentage of their number should signify their desire to terminate the enterprise. This amounted in essence to the establishment of a fund set aside for the particular purpose and to a limitation of the rights of third parties dealing with it, to a mere right *in rem* against such fund as distinguished from the rights *in personam* which would result from their dealings with any other variety of business organization.

There can scarcely be room for a difference of opinion that these were, and still remain, the essential distinguishing characteristics of a corporation and of the purposes sought in the general enactments permitting their constitution. All other corporate characteristics are subordinate and incidental. Obviously a name for the *rem* is necessary to permit it to contract, hence a distinguishing appellation is authorized. A sum of money, being inanimate, is obviously incapable of personal action; wherefore representatives of the contributors to the fund, called directors or trustees, are elected by a majority of their number to determine the policies for the promotion of the enterprise to which the fund is dedicated, and their decisions are effectuated by agents of the usual variety, who are denominated officers. The rights of the several contributors to the fund, and their relations to the directors elected pursuant to their majority determination or sufferance, are purely those of *cestui que* trust and trustee of any ordinary trust of the variety which has been the familiar subject of inquiry and adjudication for centuries.

Thus analyzed, it is obvious that a corporation possesses no extraordinary quality or characteristic beyond that of an ordinary trust except the rights expressly granted by legislative fiat, the most important of which are those of (1) actively engaging in a specified business; (2) of perpetual succession, and (3) of limitation of liabilities incurred in the transaction of the business to the particular fund voluntarily dedicated thereto.

The vast majority of cases involving the so-called attempt " to lift the corporate veil " are direct assaults upon one or another of the rights or immunities expressly granted by the Legislatures to those desiring to avail themselves of these express rights and immunities and who have performed the acts prescribed by the legislative bodies which are requisite to this end. Since such grant is express, the assault must fail unless the persons interested in the corporation have neglected to perform the acts made conditions precedent by the Legislature to the acquirement of the particular right or immunity involved, or unless their conduct in

respect to the transaction is such as to furnish an equitable estoppel against them to the pleading of the grant of the right or immunity in question. Obviously the acts which will create a situation where equity and justice cannot permit the interposition of the legal defense of incorporation, are as many as the vagaries of human conduct. No general rule may be stated respecting them. "Each case must be regarded as *sui generis.*" (*Pagel, Horton & Co.* v. *Harmon Paper Co.*, 236 App. Div. 47, 49.)

Whereas, however, any generalization is impossible beyond the statement that here, as in all branches of equity jurisprudence, fraud and inequitable conduct when demonstrated to have been practiced will taint the whole transaction, there is in the practical application of this principle to corporate relations no more difficulty than in any other branch of law.

Where fraud or other inequitable conduct render it improper for an individual to assert the right or immunity involved in the legislative grant, courts will inhibit it. (*Wendt* v. *Fischer*, 243 N. Y. 439, 445; *Matter of Gates*, Id. 193, 197; *Dobbins* v. *Pratt Chuck Co.*, 242 id. 106, 114; *Quaid* v. *Ratkowsky*, 183 App. Div. 428, 429; affd., 224 N. Y. 624; *Goss & Co.* v. *Goss*, 147 App. Div. 698, 702; affd., 207 N. Y. 742; *Pagel, Horton & Co., Inc.*, v. *Harmon Paper Co.*, 236 App. Div. 47, 52; *Modlin* v. *Licht*, 224 id. 614, 615; *Tompkins* v. *Miller, Tompkins & Co.*, 207 id. 819, 820; *Garrigues Co.* v. *Internat. Agricultural Corp.*, 159 id. 877, 880; *Remington & Son Pulp & Paper Co.* v. *Caswell*, 126 id. 142, 149; *Bresman, Inc.*, v. *Mosson*, 127 Misc. 282, 283; *Keating* v. *Hammerstein*, 125 id. 334, 339.)

On the other hand, where no invalidating fraud or inequitable conduct are demonstrated, and the sole question at issue is whether the courts will sustain the particular rights and immunities granted to the corporate organization by the legislative act, these will uniformly be upheld. (*Jenkins* v. *Moyse*, 254 N. Y. 319, 324; *Ultramar Co., Ltd.*, v. *Minerals Séparation, Ltd.*, 126 Misc. 208, 211; affd., 236 N. Y. 647; *Matter of McCafferty*, 147 Misc. 179, 188; *Matter of Stulman*, 146 id. 861, 878; *Matter of Shafran*, 143 id. 754, 759; *Matter of Richman*, 142 id. 103, 107, 108; *Matter of Langdon*, 139 id. 379, 382.)

There remain the vastly preponderant number of cases involving corporations and those interested therein, in which no question concerning the essential peculiarities of the corporate organization or its distinctive privileges or immunities are involved. These are determinable in accordance with the identical principles which would be applied were the opposing parties natural persons. (Cf. *Matter of Brown*, 252 N. Y. 366, 377.) No one would have

the temerity to maintain that the rules of contract or tort or agency differed depending on whether or not one or another variety of competent persons was concerned therein, and the same applies to ordinary questions of fiduciary responsibility such as are involved in the present litigation.

The executor in the case at bar received certain property rights as a result of his qualification. For present purposes, these consist primarily of three things, namely, *first*, the right to receive dividends which may be declared on the shares of the company; *second*, a right to vote upon such shares; and *third*, a right to receive all of the net assets of the company on its dissolution after the payment of its obligations to third parties. His possession of these rights is, however, not beneficial but purely fiduciary, and he is answerable to his beneficiaries who are primarily the creditors and secondarily the distributees of the estate, for the manner of his conduct in the holding of, and transactions or omissions in respect to, every item of the property thus held in trust.

As a corollary to the extent of the second noted holding, of the right to vote the shares, he is responsible for the personnel of the directorate of the company and for the identity of its officers and agents. He, and he alone, can elect a director or suffer one in office to continue as such. Subject only to the rights of creditors of the corporation, this executor was the legal owner of the corporation and all of its assets, and the directors thereof whom he elected or suffered to remain in office " could not presume to interfere and object to the acts of the owner of the company." (*Buffalo Loan, T. & S. D. Co.* v. *Medina Gas Co.*, 12 App. Div. 199, 205; affd., 162 N. Y. 67.) They were merely " nominal directors " (12 App. Div. 207), wholly subservient to his will and directions. Since, therefore, they were merely his instruments in the conduct of the corporation, he must assume responsibility in respect to, and account for, their acts in this regard on the familiar principle " *qui facit per alium facit per se.*"

In such a case it would be an arrant absurdity to say with the Court of Appeals in *Matter of Auditore* (*supra*) that the estate fiduciary is liable to his *cestuis que trustent* for any loss which they may sustain by reason of his misfeasances and non-feasances in respect to the corporation, and in the same breath to determine that he is under no obligation to disclose those acts and omissions which are peculiarly within his knowledge or power of ascertainment and would constitute the justiciable facts concerning the quantum of his liability.

In view of the power which an executor possesses under sections 20 and 105 of the Stock Corporation Law to sell the assets of the corporation and procure its dissolution, and the close circumscribing of his powers for continuance of a decedent's business (*Matter of Gorra*, 135 Misc. 93; *Matter of Glass*, 134 id. 291), which includes an incorporated business (*Matter of Stulman*, 146 Misc. 861, 874), imposed by law, there is ever present a potential question of authority, which the fiduciary may not avoid by a mere neglect or refusal to disclose pertinent facts.

The only direct authorities on the question here presented, which have been found, are in accord with the principle that where the fiduciary is a controlling stockholder in a corporation, the transactions through the medium of the corporation are his own acts which must be fully reflected in his account. (*Matter of Gerbereux*, 148 Misc. 461, 466; *Farmers' Loan & Trust Co.* v. *Pierson*, 130 id. 110.)

It is accordingly the opinion of the court that the executor's application to strike out the objections of the special guardian to his account on the ground that the corporation is a separate legal entity is wholly untenable. On the contrary, it conceives the law to be that by permitting an individual or a number of individuals to organize in the corporate manner, the Legislature endows the collective organization with certain specified rights and makes it subject to certain defined obligations. In the absence of fraud, which vitiates any right and destroys any shield, the question of whether or not any particular right may be exercised by or asserted against or in connection with the organization so constituted, depends primarily on whether it is within the enumeration of the specified rights granted to or obligations imposed upon this type of organization or the individuals ultimately composing it. If it is, the express conditions of the authorization of organization will govern; otherwise, general principles of law and equity must be applied.

This court wishes to join the Appellate Division (*Pagel, Horton & Co., Inc.*, v. *Harmon Paper Co.*, 236 App. Div. 47, 49) in especially calling attention to the "most instructive and comprehensive discussion of the matter by Judge BIJUR in his most excellent opinion in" the case last cited. His entire discussion of the subject should be read with attention by all who are interested therein. The present consideration cannot better end than by a quotation of two excerpts from pages 119 and 120 of that opinion. "If the testator considered it useful or convenient to avail himself of any corporate facilities in the conduct of his business, I see no reason why that consideration should be allowed to interfere with his

declared purpose to have his property cared for after his death by trustees for the benefit of certain named beneficiaries according to the ordinary rules relating to trusts."

" In this case the beneficiaries desire only information, and since the trust includes, not only theoretically, but actually and practically, the management of the corporate affairs, and since there is no obstacle or forbiddance in the way of or against furnishing the information, the *cestuis* need do no more than ask for the information in order to become entitled thereto."

It follows that the objection of the special guardian to the account as filed must be sustained. The executor will be directed to file an amended account within twenty days which shall fully set forth all transactions of the corporation since his qualification.

Enter order on notice accordingly.