In the Matter of the Estate of JOSEPH AUDITORE, Deceased.

Surrogate's Court, Kings County, May 8, 1936.

*John J. Kean* [*Edward H. Wilson* of counsel], for the petitioners, John J. Kean and Edward H. Wilson.

*McCabe & Hickey*, for the contestants, Carmela Auditore, Pauline Ruggiero and Jennie Parascandola, adult children of decedent.

*Thomas Cradock Hughes*, special guardian for Carmelo Auditore, infant child of decedent.

WINGATE, S.   When the Appellate Division unanimously affirmed (233 App. Div. 740) the result attained by this court (136 Misc. 664) in the involved litigation in this estate and a further appeal was dismissed by the Court of Appeals (257 N. Y. 554), the hope was indulged that additional extended attention to its affairs would be unnecessary.   The present controversy demonstrates that this anticipation was over-optimistic.

The instant litigation concerns the *quantum* of the compensation properly allowable to the attorneys who represented the adminis-tratrix, and again involves questions of law, the proper disposition of which is unilluminated by direct precedent, as was the condition encountered in the main litigation which resulted in the ultimate establishment of new legal landmarks in estate administration (249 N. Y. 335).

In the latter part of 1931 a proceeding was instituted for the determination of the proper compensation of these attorneys.   This was referred for determination to Hon. Walter Jeffreys Carlin, as referee, by order made on March 9, 1932.   Numerous and pro-tracted hearings have been held before him from time to time during the intervening period of four years.   He has now filed his report, and earnest opposition to its confirmation has been interposed by all interested parties.   The demonstrated divergence in views hinges as much, if not more, upon differing concepts of certain

legal principles as upon his factual decision. It is these legal principles which require present attention, in which process a partial review of the pertinent facts is necessary.

The decedent, who died on May 9, 1920, left a will which, except for a single legacy in trust, bequeathed his estate one-half to his widow and the balance to his four children in equal shares. At the time of his death the decedent and his brother Frank Auditore were engaged in the business of stevedoring and shipping, and were equal co-owners thereof. The business was conducted through the medium of a series of six corporations.

Upon the renunciation of the named executor, the widow and this brother of the decedent qualified as administrators c. t. a. Admittedly, the widow had no business qualifications or experience, and from the time of her husband's death up to the present, wholly relied upon others. Her first reliance was placed upon her coadministrator and brother-in-law. Facts having come to her attention indicating his unworthiness, she retained John J. Kean to represent her early in 1923 and the latter associated Edward H. Wilson with him as counsel. These two are the present petitioners and appear to have been her sole advisers during the greater portion of the period of her incumbency of the office of administratrix.

These attorneys promptly instituted a stockholder's action against Frank Auditore, as an indirect result of which they individually became officers and directors of all of the corporations in which the decedent and his estate were interested and achieved substantial, if not absolute, control of their affairs. The record renders it obvious, and the referee has found, that the relations of the attorneys with the corporations arose and continued solely because of the fact that they were attorneys for the estate and that they were serving as such officers solely for the purpose of serving the estate. The books of various corporations were taken to Mr. Kean's office and he and Mr. Wilson made absolute and final decision as to their affairs.

The referee has found without objection that during their domination of the affairs of the corporation " many actions and proceedings were had, the claimant attorneys appearing for plaintiffs and defendants and deciding for themselves as to what actions should be brought or detended, and what appeals should be taken. Although the actions were in the names of the various corporations, Messrs. Wilson and Kean were, practically speaking, both clients and attorneys." In purported remuneration for their services they paid themselves considerable sums from the assets of the corporations, and this, without corporate resolution or direct (or it is asserted, indirect) approval of their real client, the administra-

trix, by reason of whose retainer alone they had achieved their position. It is asserted by the special guardian for the infant distributee and by the present attorneys for the widow and other children who have attained majority, that the total of the sums which they thus paid to themselves exceeded $131,000.

The referee has found that the sums thus received by them were taken from any funds which chanced to be available without any necessary relation to the particular nominal client for which the services in question were performed. In this connection, he cites the following: " The Redondo Steamship Co., Inc., and the Auditore Contracting Company were billed for services in the estate of Frank Auditore, bankrupt; $1,500 was paid by Redondo Steamship Co., Inc., for services in the application for revocation of letters of administration of Frank Auditore, and Mr. Wilson frankly states that the reason the Redondo Steamship Co., Inc., paid for these services was ' that there were no funds out of which it could otherwise be paid.' "

As a result of the previous proceeding in this court, a recovery of approximately $254,000 was had against the surety on the bond of Frank Auditore, the deposed coadministrator, and it is the position of the attorneys that their compensation in respect to this proceeding " had nothing to do with any other legal services they rendered to the estate or to the administratrix, and the value of the services should be appraised without regard to any other payments they may have received from the estate." The correctness of this view is earnestly contested on behalf of the widow and children of the decedent.

At the time the present application was first made, this court, in an informal conference with all parties, inquired as to whether an agreement could be reached as to a sum to which the attorneys would be entitled in any event. Such sum was stipulated to be $50,000, and the court accordingly directed that such payment be made without prejudice to any further allowance which a full development of the facts might demonstrate to be warranted.

Counsel for the widow and children now assert that their agreement in this regard was predicated upon a lack of understanding of the extent of the withdrawals which had been made as hereinbefore outlined, and that this misunderstanding was the result of a suppression of the true facts by the present applicants.

Two legal questions which are of vital importance to the respective parties were raised before the referee and must now receive attention by this court. The first is as to whether the services rendered by the applicants to the various corporations and the sums which the former paid themselves from the funds of the latter are

properly cognizable by this court in arriving at the reasonable sum to which the attorneys became entitled by reason of the services rendered on the retainer by the administratrix. The second involves the authority of this court to direct a refund by the attorneys in the event that it be determined that the total sum paid to, or retained by, them exceeds the sum to which they would be entitled on ordinary principles of *quantum meruit*. A negation of both questions is asserted by the attorneys; the affirmative is contended for by the widow and children. The learned referee entertained doubts on the subject and accordingly adopted the perhaps wiser course under the circumstances, of deciding against the jurisdiction and remitting the question to the court for determination.

In his report (p. 19) the referee notes testimony of one of the applicants to the effect that repeated assurances were given by him to the administratrix that all questions of fees, including the sums taken from the corporations for legal and administrative services rendered, would be submitted to and adjudicated by this court. In the absence of any countervailing demonstration (and none has been called to the attention of the court), this would seem to establish an estoppel against the claimants to interpose their present objection to a full review of their acts in this regard.

A determination of jurisdiction by reason of estoppel is, however, a most unsatisfactory and frequently hazardous basis of adjudication, which should be attained only as a final resort for the purpose of promoting the ends of justice.

On ordinary principles, it appears obvious that some review should be had of the wholly uncontrolled actions of these attorneys in taking to themselves sums which the referee has found exceeded $110,000 in amount, and which the opposing parties assert were between $20,000 and $25,000 more. It is, of course, true that these sums were taken from corporations which in theory at least, and for certain purposes, are legal entities distinct from the estate or its distributees. One-half of the equity of assets over liabilities of all of these corporations, however, was the vested property of this estate, and, indirectly of its distributees, the present respondents. It would be a travesty on justice were the interposition of the corporate fiction to be deemed to enable those who obtained their *locus standi* to appropriate these assets solely by reason of this interest, to assert that in consequence thereof the real owners of such interest could not be heard to demand an accounting respecting such acts of appropriation which must inevitably prejudice the value of the interests which the petitioners were retained to protect.

In the opinion of the court quite aside from the question of estoppel, the contention of the petitioners that their withdrawal of assets from the corporations may not be considered, is untenable for three reasons.

The first is based upon the doctrine established by the Court of Appeals in the main litigation in this very case The estate was the owner of stock in these corporations. This stock presumably possessed some value at the time the attorneys obtained control of the corporate affairs, at least so far as certain of the corporations were concerned. The appropriation by the petitioners of considerable portions of their liquid assets inevitably resulted in a diminution of the value of the stock owned by the estate, which, in so far, if at all, as it was excessive and unwarranted, would give rise to a cause of action in favor of the estate against those who had inflicted this injury upon it. This damage, to the extent of its demonstration, would be a proper equitable set-off against any claim of the attorneys against the estate. In this aspect, an inquiry into the acts of the attorneys in respect to their withdrawals from the corporations is merely a logical application of the doctrine with which the name of *Matter of Auditore* is indissoluably connected.

This court is, however, of the opinion that whereas a partial solution of the question would be attainable in this manner, it would, under the particular facts here present, amount to an unjustifiable lip-service to a legal fiction which possesses no reasonable relation to the situation of the present parties. The petitioners, as attorneys employed on a general retainer for the protection and advancement of the interests of the administratrix, were fiduciaries of the very highest type of accountability and responsibility, transcending if possible, even that of the testamentary fiduciary herself. In *Matter of Steinberg* (153 Misc. 339) this court had occasion to review at some length the accountability of a testamentary fiduciary in respect to the assets and affairs of a corporation of which he obtained control by reason of his fiduciary position. Such control would usually be non-existent in the absence of a majority stock holding. (*Matter of Steinberg*, 153 Misc. 339, 340; *Matter of Ebbets*, Id. 775, 777.) This is, however, merely an inference of fact which is subject to rebuttal and has been rebutted in the present instance since the absolute control of the destinies of the corporations by the petitioners is conceded or has been abundantly demonstrated. The essential prerequisite to accountability is actual control by reason of estate stock ownership, and if this be affirmatively demonstrated and " no question concerning the essential peculiarities of the corporate organization or its distinctive privileges or immunities are involved ' the problem is " determinable in accordance with the

identical principles which would be applied were the opposing parties natural persons." (*Matter of Steinberg* 153 Misc. 339, 344.)

In the case at bar, had the properties of which the attorneys took charge by reason of their retainer, been certain unincorporated apartment buildings instead, in part, of incorporated steamships, no one would have the temerity to assert that their personal withdrawal of a portion of the receipts of the operation of the apartments would not be subject to judicial scrutiny in a proceeding like the present, and the same should be true here since there is present no question of " the particular rights and immunities granted to the corporate organization by the legislative act," which alone warrants a refusal to disregard the corporate entity.

Another pertinent consideration in this connection is found in the fact that the petitioners themselves disregarded the corporate entities in their dealings with the assets of the several corporations by their use, as hereinbefore noted, of their assets to make payment to themselves for claims primarily due from other sources. They should not be permitted to adopt irreconcilably divergent positions as the exigencies of their personal interests may seem to dictate.

This leads naturally to the third basis for overruling the contention of the petitioners. They admittedly performed extensive services for the estate which gave rise to an obligation for reasonable remuneration. To the extent, however, that such payment has been made, they are not entitled to a second recovery. If it be assumed that their reasonable compensation from the estate would amount to " X " dollars, and their reasonable remuneration for services performed for one of the corporations was " Y " dollars, then, if the corporation had actually paid them " Y " dollars plus " Z " dollars, the " Z " dollars being in excess of the actual obligation of the corporation to them, may properly be considered in view of their course of dealings in the entire matter, as a payment on account of the estate obligation of " X " dollars, and, therefore, deductible from the amount reasonably payable by the estate.

The adoption of any of the three views outlined must result in a determination that the services performed for the corporations and the sums withdrawn therefrom are proper subjects for investigation and elucidation in the present inquiry.

The second question on which the parties differ concerns the power of the court to direct a return by the petitioners to the estate of the excessive sums received by them, if any. Authority for this course is unquestionable, although its basis might conceivably differ depending upon which of the three theories be adopted in respect to the problem previously discussed. If the court were to follow the practice of the petitioners in disregarding the corporate fiction, it would follow that restitution of any excess sums withheld by the petitioners from the corporate funds could be

directed under the doctrine of *Matter of Anderson* (136 Misc. 110), which was applied and approved by the Appellate Division (232 App. Div. 704) and the Court of Appeals (257 N. Y. 592) in the same case (*Matter of Duggan,* 146 Misc. 596, 598) and which has since been reaffirmed in *Matter of Rosenberg* (263 N. Y. 357, 360). If, on the other hand, either of the other theories be adopted, such recovery could be had under the addition to section 231-a of the Surrogate's Court Act effected by chapter 332 of the Laws of 1934. (*Matter of Rosenberg,* 157 Misc. 490, 497.)

The court is accordingly of the opinion that the objections of the respondents to the exclusion of evidence in respect to the services of the petitioners to the corporations, the reasonable value thereof, and the sums which the petitioners paid themselves therefor, are well founded, and the matter will be remitted to the learned referee for consideration of these subjects and such further action as to him may seem proper in consonance with this opinion.

Enter order on notice in conformity herewith.