In the Matter of the LAWYERS MORTGAGE COMPANY (Premises 6801 Bay Parkway, Brooklyn).

Supreme Court, Special Term, Kings County, October 2, 1939.

*Walter B. Herendeen* [*Leland H. Shaw, Jr.*, and *Edmund G. Bill* of counsel], for Louis H. Pink, Superintendent of Insurance of the State of New York, as liquidator of the Lawyers Mortgage Company, petitioner.

*Lewis & Kelsey* [*F. Van Parr* of counsel], for the Title Guarantee and Trust Company, trustee.

*Maurice Finkelstein* [*Solomon J. Heifetz* of counsel], for the Mortgage Commission.

*Cullen & Dykman* [*Stanley Hawkes* of counsel], for the Brooklyn Trust Company, a certificate holder.

BROWER, J. This is a motion by the Superintendent of Insurance, as liquidator of Lawyers Mortgage Company (hereinafter referred to as the Guaranty Company), to compel Title Guarantee and Trust Company, as trustee for certificate holders in a bond and mortgage covering premises 6801 Bay Parkway, Brooklyn, N. Y., to register a certificate held by him as such liquidator and for an order declaring and adjudicating such certificate to be on a parity and entitled to share equally with certificates in said mortgage held by the public, and directing said trustee to pay over to him all moneys held by it with respect to principal and interest, as well as all future moneys collected on account of such certificate.

On May 5, 1930, the Guaranty Company caused to be incorporated, pursuant to the provisions of the Banking Law, Lawyers Mortgage Safe Deposit Company, hereinafter sometimes referred to as the Safe Deposit Company. With the exception of the directors' qualifying shares, all of the stock of the latter was purchased by the Guaranty Company at $120 per share. Most of the officers and directors of the Safe Deposit Company were also officers or directors of the Guaranty Company, and the Safe Deposit Company operated safe deposit vaults in the basement of the building on various upper floors of which the Guaranty Company maintained its offices.

On or about November 24, 1931, the Safe Deposit Company purchased from the Guaranty Company with its own corporate funds an undivided participation in the face amount of $1,000 in a bond and mortgage covering premises 6801 Bay Parkway, Brooklyn, N. Y., issued and guaranteed by the Guaranty Company and evidenced by certificate No. 200 in the series. This certificate, among other things, provided: " That the share or interest represented by this certificate is not subordinate to any other shares in said bond and mortgage and is not subject to any prior interest therein." This investment was one of a number of purchases of certificates made by the Safe Deposit Company in order that its required minimum capital might be invested.

On August 2, 1933, the Guaranty Company, pursuant to order of the Supreme Court, New York county, was given into the hands of the Superintendent of Insurance for purposes of rehabilitation. Among the assets of which he took possession as rehabilitator were the shares of capital stock of the Safe Deposit Company. In the course of his proceedings he ascertained that no profit was being made in the operation of the Safe Deposit Company and the conclusion was reached that it would be desirable, as a step in the rehabilitation proceeding, to close out its business and affairs, and the necessary and appropriate proceedings were thereupon taken to procure its dissolution pursuant to section 486 of the Banking

Law, the vote of the rehabilitator as controlling stockholder being approved by the Supreme Court in the rehabilitation proceeding. In the meantime the Superintendent had purchased the qualifying shares of stock from the directors of the Safe Deposit Company and the Guaranty Company thus became the sole stockholder; there being no creditors, all the assets of the Safe Deposit Company were, therefore, turned over to the Guaranty Company. Among the assets so turned over was said certificate No. 200. Subsequently, on November 17, 1937, an order was entered by the Supreme Court, New York county, directing the liquidation of the Guaranty Company, as a result of which the Superintendent of Insurance, as liquidator, was vested with title to all property, contracts and rights of action possessed by the Guaranty Company, and was directed to deal therewith in his name.

Prior to said order of liquidation an order was entered by the Supreme Court, Kings county, approving, in accordance with the provisions of chapter 19 of the Laws of 1935, as amended (McKinney's Unconsol. Laws, § 1751 *et seq.*), a plan of reorganization of said bond and mortgage covering premises 6801 Bay Parkway and appointing Title Guarantee and Trust Company trustee to hold and administer the same for the benefit of the certificate holders. After the trustee took possession of the trust estate the Superintendent, as liquidator, presented said certificate No. 200 for registration, but the trustee refused to register the same until this court had determined whether or not the interest represented thereby is on a parity with all other outstanding certificates in this mortgage issue. The Superintendent thereupon brought this proceeding.

The principles of law developed during the recent period of rehabilitation of title and guaranty companies seem to be well established. By the numerous decisions, the rights of owners of retained or reacquired interests in certificated issues to share ratably or not have been well defined. In *Pink* v. *Thomas* (257 App. Div. 354) Mr. Justice UNTERMYER, writing for the majority of the court, succinctly outlines these principles in the following language: " It is established that in the absence of a guaranty of payment or other special equity the assignor of part of a mortgage indebtedness is entitled to share equally with his assignee in the proceeds of insufficient security. (*Title Guarantee & Trust Co.* v. *Mortgage Commission*, 273 N. Y. 415.) Where, however, the assignor has guaranteed payment of certificates he is not entitled as owner of a retained portion of the bond and mortgage to share *pro rata* with other certificate holders in the proceeds of the security unless the contract so provides. (*Matter of Title & Mortgage Guaranty Co. of Sullivan County*, 275 N. Y. 347.) The right of the assignor thus to share depends, therefore, upon the existence

of a stipulation in the contract of the parties to that effect. (*Matter of New York Title & Mortgage Co.* [*Series C-2*], 253 App. Div. 308; affd., 278 N. Y. 488; *Matter of Title & Mortgage Guaranty Co. of Sullivan County, supra.*) ''

It seems to me, however, that the facts in the instant case present a different problem. Here, the controlling factor is not the construction of language contained in a certificate which is retained or reacquired by the issuing company by repurchase and/or cancellation. It is my view that the question here is whether or not the interest reacquired by a parent company from its subsidiary by operation of law as distinguished from a repurchase or cancellation, is subordinate to the interest of the other outstanding certificate holders.

The Safe Deposit Company was a separate and distinct legal entity. The certificate in question was purchased with its own funds. The parent Guaranty Company was placed in rehabilitation and thereafter the Safe Deposit Company was ordered dissolved, upon application of the rehabilitator as sole stockholder. Subsequently, on or about September 28, 1936, the certificate in question was assigned to the Guaranty Company. It never was the property of the Guaranty Company before the entry of the order of rehabilitation.

It is immaterial that the Safe Deposit Company is now dissolved. The question of parity should be determined under the facts involved herein as of the date of its issue. At that time it was on a parity and now it still is on a parity. The liquidator as successor to the assets of the subsidiary company is in the same position and is entitled to share in the trust estate to the same extent as the outstanding certificate holders of the same series.

Attention is called to a decision in *Matter of Lawyers Mortgage Co. (731–735 West 183rd St.,* 172 Misc. 574), by which it was adjudicated that a certificate similarly held is subordinate. It seems that the facts in the *West 183rd Street* matter are substantially the same as those before us, except that in the *West 183rd Street* certificate there is no recital permitting the Guaranty Company to acquire certificates for its own account. The basis for the conclusion in that decision was stated as follows: '' In view of the fact that the wholly owned subsidiary had no creditors, the parent must be treated as the real owner of the certificate and the corporate entity disregarded.'' I am unable to agree with that conclusion or to follow the same reasoning.

In general, the corporate entity will not be disregarded except in rare exceptional cases where the corporate form has been used as the instrument of wrong or injustice. (*Berkey* v. *Third Ave. R.*

Co., 244 N. Y. 84; *Lowendahl* v. *Baltimore & Ohio R. R. Co.*, 247 App. Div. 144; affd., 272 N. Y. 360.)

The Safe Deposit Company was organized under the Banking Law, not under the Insurance Law, as was its parent company. The subsidiary corporation here was not brought into existence to perform duties similar to those of the parent company nor to act as agent for the parent company in the guaranteeing of mortgages. The subsidiary company was established for the purpose of carrying on a safe deposit business. The facts in this case do not justify " piercing the corporate veil." One corporation is not liable for the acts of another corporation, merely because it owns all the stock of the second company and can control its activities nor because the two corporations have directors or officers in common. (*Pagel, Horton & Co., Inc.*, v. *Harmon Paper Co.*, 236 App. Div. 47.)

The test for justifying the disregard of a corporate entity is fraud or illegality. It is a principle of equity invoked only where to preserve the corporate fiction will work inequity or injustice. (*Jenkins* v. *Moyse*, 254 N. Y. 319.)

Here the facts lead to a different result. The assets of the parent company were not depleted in reacquiring the certificate under consideration. It was transferred as a matter of law, and constitutes a part of the estate in which *all creditors* of the Guaranty Company will share, including the certificate holders of this issue. There was no obligation on the part of the Guaranty Company under its guaranty or otherwise to repurchase the certificate. I can see no reason why this particular certificate should be considered as having been taken over by the Superintendent for the particular benefit of the other holders in this issue. As far as the investors in this issue were concerned they have not in any sense been hurt by ownership at any time of the certificate in question by the Safe Deposit Company.

To subordinate the interest represented by this certificate would be in effect to grant to the certificate holders in this issue a preference over other creditors. It is one of the fundamental principles of equity that " equality is equity " and to invoke the equitable doctrine of " piercing the corporate veil " would be to completely disregard this maxim.

Under the circumstances herein " this is not a proper case for piercing the corporate veil * * *. To do so would work an injustice * * *. The corporate veil may at times be pierced to do equity and justice, but never to accomplish the reverse." (See *Matter of New York Title & Mortgage Co. [Series C-2]*, 172 Misc. 73.)

Motion by Superintendent of Insurance as liquidator granted in all respects. Settle order on notice.